1  DAVID P. BEITCHMAN, SBN 198953
2  TODD E. CHVAT, SBN 238282
   **BEITCHMAN & ZEKIAN, P.C.**
3  510 WEST 6TH STREET, PH 1220
4  LOS ANGELES, CALIFORNIA 90014
   TELEPHONE: (213) 488-1115
5  FACSIMILE:   (213) 488-1176
6  Attorneys for Plaintiff STOP STARING! DESIGNS
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**
10

11  STOP STARING! DESIGNS, a          ) **Case No.:**
12  California corporation;            )
                                       ) **COMPLAINT FOR:**
13                                     )
                Plaintiff,             ) **(1) FEDERAL TRADEMARK**
14                                     )     **INFRINGEMENT;**
15      vs.                            ) **(2) TRADE DRESS**
                                       )     **INFRINGEMENT;**
16                                     ) **(3) FRAUD;**
17  TATYANA, LLC, a Nevada corporation )
    d/b/a BETTIE PAGE CLOTHING;        ) **(4) MISAPPROPRIATION OF**
18  TATYANA KHOMYAKOVA, an             )     **TRADE SECRETS;**
    individual; JAN GLASSER, an        ) **(5) COMMON LAW UNFAIR**
19  individual; and Does 1 through 10, )     **COMPETITION; and**
20  inclusive,                         ) **(6) CALIFORNIA UNFAIR**
                                       )     **COMPETITION;**
21                                     )
22             Defendants.             ) **DEMAND FOR JURY TRIAL**
                                       )
23  _____   )

24      Plaintiff STOP STARING! DESIGNS (hereinafter "Plaintiff") submits the
25  following Complaint against Defendants TATYANA, LLC d/b/a BETTIE PAGE
26  CLOTHING (hereinafter "BP CLOTHING"); TATYANA KHOMYAKOVA (hereinafter
27  "TATYANA"); JAN GLASSER (hereinafter "JAN") and Does 1 through 10 (hereinafter
28  collectively "Defendants"), and alleges as follows:

## **THE PARTIES**

1.      Plaintiff is a corporation duly organized and existing under the laws of the state of California and conducting business within the State of California, County of Los Angeles.

2.      Plaintiff is informed and believes and thereupon alleges that BP CLOTHING is a Nevada corporation with its principal place of business in Las Vegas, Nevada.  BP CLOTHING regularly and routinely conducts business within the State of California, County of Los Angeles.

3.      Plaintiff is informed and believes and thereupon alleges that TATYANA and JAN are residents of the state of Nevada.  By and through BP CLOTHING, TATYANA and JAN regularly and routinely conduct business within the State of California, County of Los Angeles.

4.      Plaintiff is ignorant of the true names and capacities, whether individual, corporate, associate or otherwise, of defendants DOES 1 through 10, inclusive.  Plaintiff is informed and believes, and thereon alleges, that each fictitious defendant was in some way responsible for, participated in, or contributed to the matters and things of which plaintiff complains herein, and in some fashion has legal responsibility therefore.  When the exact nature and identity of such fictitious defendants' responsibility for, participation in, and contribution to the matters and things herein alleged is ascertained by Plaintiff, Plaintiff will seek to amend this Complaint and all proceedings herein to set forth the same.

## **JURISDICTION AND VENUE**

5.      This is an action for the infringement of registered trademark brought pursuant to the Lanham Act of 1946, 15 U.S.C. §1051, et seq and related claims of unfair competition and fraud under statutory and common law of the State of California.  This Court has original jurisdiction in this matter pursuant to 28 U.S.C. §§1331, 1338, and 1367.  Further, this Court has personal jurisdiction over Defendants as they all transact

business in the State of California, and substantial part of the events giving rise to the claims alleged herein occurred in the State of California.

6.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) as a substantial part of the events giving rise to the claims alleged herein occurred in this district.

## INTRODUCTION

7.     Plaintiff is a well known manufacturer and distributor of originally designed vintage inspired women's apparel.  Each garment sold by Plaintiff is made from top quality fabrics and designed single-handedly by its principal, Alicia Estrada (hereinafter "Alicia").  All items prominently bear the trademark STOP STARING! and have done so since Plaintiff's inception in 1998.

8.     For over a decade, Plaintiff has pioneered the concept of combining the look and feel of classic vintage apparel with a sexy retro rockabilly flare.  Once thought of as old fashioned, Plaintiff has created a niche that is now coveted in the upper most fashion circles.  In total, Plaintiff's dresses are featured at hundreds of boutiques in over thirty-five (35) countries world-wide.

9.     Garments bearing the STOP STARING! designation have been worn by celebrities such as Christina Aguilera, Paris Hilton, Eva Mendes, Rebecca De Mornay, Kelly Osborne, Ashley Greene, Zooey Deschanel and Kim Kardashian, and have been featured in national publications such as Vogue, Elle Girl, Seventeen, Allure, People, In Touch, and Life and Style.

10.     In addition Plaintiff has received national exposure for its unique and fashionable apparel designs and takes enormous pride in its reputation for excellence and quality workmanship.   In 2005, Plaintiff was awarded "Minority Manufacturing Firm of the Year" by the Mayor of Los Angeles, Antonio Villaraigosa.

11.     All STOP STARING! garments are produced in Los Angeles County by Plaintiff and the level of workmanship exercised in the manufacturing process is superior and confirms with the strict standards established by Plaintiff.

12.     Since 1998, Plaintiff's products have generated retail sales in the millions of dollars.

13.     In June of 2002, Alicia sought federal protection for the designation STOP STARING! and thereby filed a trademark application within the United States Patent and Trademark Office in connection with women's apparel.  Said application was registered on April 22, 2003 and assigned Reg. No. 2,709,522.

14.     In furtherance of corporate prosperity and goodwill, Alicia assigned to Plaintiff the exclusive rights granted to her in the trademark registration under the Lanham Act of 1946.  Thus, Plaintiff is entitled to the exclusive use and benefit of the STOP STARING! mark, which has been in continuous use since Plaintiff's inception.

## DEFENDANTS' UNLAWFUL CONDUCT

15.     This lawsuit involves infringement upon the STOP STARING! mark by each of the Defendants as well as a methodical scheme by Defendants TATYANA and JAN to establish a trust relationship with Plaintiff and its agents, use said relationship in an effort to obtain confidential information regarding Plaintiff's operation, and thereafter exploit the same in order to create a directly competing carbon-copy company to that of Plaintiff's.

16.     In February of 2006, Plaintiff was first approached by TATYANA at its exhibitor booth at the MAGIC Apparel Tradeshow in Las Vegas, Nevada.  TATYANA stated that she was a model and that she loved STOP STARING! apparel and desired to open her own boutique to sell Plaintiff's garments.

17.     In March of 2006, shortly after the Vegas tradeshow, Plaintiff was contacted by JAN who led Plaintiff to believe that he was TATYANA's husband.  During the conversation, JAN stated that TATYANA was totally obsessed with Stop Staring! and spends countless hours online searching Plaintiff's website.  He said that if TATYANA was going to obsess over Stop Staring! she might as well try to work with them.  It was then that JAN asked if he and TATYANA could visit the Stop Staring! facility to discuss a new joint venture.

18.     On March 17, 2006, JAN and TATYANA came to Plaintiff's office.  They told Plaintiff they were in the process of opening a women's boutique in Las Vegas in the shops in Desert Passage at the Aladdin and wanted to be a wholesale retailer of Stop Staring! items.  During the meeting, Alicia suggested that JAN and TATYANA name their proposed store "Bettie Page" to give it that vintage feel if they could secure the necessary rights to do so.

19.     The parties also discussed the possibility of having Plaintiff design and manufacture private label dresses for them to be sold exclusively in the Las Vegas boutique under the designation "Bettie Collection - Exclusively by Stop Staring!"

20.     Excited about the opportunity to expand its business and after approximately four (4) hours of discussion, Plaintiff agreed to work with JAN and TATYANA in furtherance of the proposed endeavor.

21.     JAN and TATYANA then requested to see Plaintiff's entire facility, including Plaintiff's showroom, offices, inventory stock room, sales offices, design room, pattern room, and sample room, stating that they had to ensure that Stop Staring! was equipped to manufacture their huge volume of expected wholesale orders.

22.     Despite the fact that the above areas are off limits to the general public (with the sole exception of the showroom) and contain highly confidential information, Plaintiff allowed JAN and TATYANA access to such areas under the false pretense that the parties would be working together in pursuit of a common unified interest.

23.     After the meeting, JAN sent Alicia an email thanking her for the visit and reasserting that they were moving forward to feature Stop Staring! in their Las Vegas store.  JAN further stated that the Las Vegas store would indeed be named "Bettie Page" (as suggested by Alicia) and that negotiations were currently underway to retain the necessary rights from CMG Worldwide Inc.

24.     However, JAN stated that in order to obtain the lease for the Desert Passage location, they would need some samples of Plaintiff's dresses.  A true and correct copy of an email communication between the parties is attached hereto as **Exhibit A**.

25.     Again, believing that that the parties would be working together and in furtherance thereof, Plaintiff provided JAN and TATYANA with five (5) dresses at standard wholesale prices with the understanding that the garments would be identified as belonging to Stop Staring!.  True and correct copies of Plaintiff's invoices are attached hereto as **Exhibit B**.

26.     Nevertheless, Plaintiff is informed and believes that JAN and TATYANA passed off the dresses provided by Stop Staring! as their own and even submitted a graphic image of the proposed "Bettie Page" store to the Desert Passage landlord which used Plaintiff's copyrighted model images.  A true and correct copy of Defendants' graphic image of the proposed "Bettie Page" store is attached hereto as **Exhibit C**.

27.     As a result of the unauthorized usage of Plaintiff's materials, JAN and TATYANA were able to secure the lease for the store at the shops in Desert Passage at the Aladdin.  Plaintiff is further informed and believes that as a result of the unauthorized usage of Plaintiff's materials, JAN and TATYANA were able to secure the rights to use the name "Bettie Page" from CMG Worldwide Inc.

28.     From March until May 2006, the parties had numerous discussions, email communications, and several face-to-face meetings wherein Defendants were privy to confidential information regarding Plaintiff's business practices, including its manufacturing techniques, customer and pricing information, supplier and vendor information, and fabric content.  All disclosures were made by Plaintiff under the false pretense that the parties would be working together in pursuit of a common unified interest.

29.     In May of 2006, JAN sent Alicia an email stating that CMG Worldwide Inc., the licensor of the Bettie Page rights, would not allow the mark Stop Staring! and Bettie Page to be on the same label.  JAN's email further stated that "[s]o where we are is this: The Bettie Page store and web site will sell the clothing of Stop Staring! out of your normal line of clothing at our in store prices and on the web at "discounted prices" that match your retail price.  Anyway, we still get the benefit of using the name – only we will

1  be selling merchandise as a normal wholesale client and it will have only your normal

2  label."

3      30.    In essence, the above was precisely what the parties had initially agreed to do,

4  i.e., Defendants were to be a wholesale retailer of Stop Staring! garments.

5      31.    After receipt of the above email, Plaintiff attempted to contact JAN to discuss

6  the final stages of the parties' business relationship, but never got a response.

7      32.    Rather, Plaintiff received a cease and desist letter from CMG Worldwide Inc.

8  on February 28, 2007 regarding one of its models at the time, Ms. Bernie Dexter, who

9  happens to look like Bettie Page.  In total, the cease letter accused Plaintiff of the

10  unauthorized usage of Bettie Page's likeness simply because she bears a resemblance to

11  Bettie Page and thereby demanded that Plaintiff pay CMG an exorbitant licensing fee.

12      33.    Immediately upon receipt of the letter from CMG, Plaintiff contacted JAN to

13  determine what was going on as it was highly suspicious that CMG was now sending

14  Plaintiff threatening letters in the wake of Defendants recent entry into a "Bettie Page"

15  licensing agreement with them.  JAN stated that he was a "good friend" of CMG's CEO,

16  Mark Rossler, and that he would take care of it, however, Plaintiff never heard back from

17  JAN in this regard.

18      34.    As a precautionary measure, Plaintiff was eventually forced to cease its

19  relationship with Ms. Dexter whom it had been working with for over three (3) years.

20      35.    On March 6, 2007, Plaintiff was shocked to discover that the website

21  <www.bettiepageclothing.com> was launched and dresses were available online for sale.

22  More importantly, Plaintiff was mortified because most of the dresses featured on the

23  website were a complete and blatant rip off of Stop Staring!'s designs.  Plaintiff is even

24  informed and believes that its dresses were in fact the dresses utilized by Defendants in

25  the photo shoot.

26      36.    Additionally, Defendants entire website had the same overall look and feel as

27  Plaintiff's site and was confusingly similar thereto.  Defendants used the same pink and

28  light green tones for their background, copied Plaintiff's specific shades of color choices,

1 used similar photo backgrounds, similar themes, similar model hair and makeup, similar

2 product descriptions and even used boomerangs and stars that looked nearly identical to

3 Plaintiff's images. Attached hereto as **Exhibit D** are numerous comparison images

4 evidencing the extreme similarities existing between Defendants' offerings and Plaintiff's

5 designs and overall image.

6     37.     Defendants' actions were clearly undertaken with the specific intent to copy

7 Plaintiff in every aspect of its business and thereby hijack the image that took Plaintiff

8 nearly a decade to build.

9     38.     On September 5, 2007, BP CLOTHING was created by JAN and TATYANA

10 in furtherance of their unlawful scheme and in an attempt to avoid individual liability for

11 their wrongdoings.

12     39.     Thereafter, on September 24, 2007, Plaintiff discovered that Defendants had

13 not only stolen its overall image and designs, but were apparently using the very same

14 building which Plaintiff resides to manufacture their copycat garments. In a common

15 freight elevator shared exclusively by tenants of Plaintiff's building, a Stop Staring!

16 employee found a "Bettie Page Clothing" label on the floor and later found discarded

17 fabric pieces (not belonging to Plaintiff) which were identical to those used by

18 Defendants in the manufacture of their garments. A true and correct copy of the "Bettie

19 Page Clothing" label found in the common freight elevator of Plaintiff's building is

20 attached hereto as **Exhibit E**.

21     40.     Moreover, in or around November 2007, Plaintiff learned that Defendants

22 started using Ms. Bernie Dexter, Plaintiff's former main model and the very same

23 individual that CMG Worldwide Inc. forced Plaintiff to cease business with, to model its

24 garments.

25     41.     As detailed above, CMG Worldwide Inc. was the entity that licensed

26 Defendants the right to use Bettie Page's name, likeness and image. Thus, Plaintiff is

27 informed and believes that Defendants used their relationship in order to get CMG to

28

1    send Plaintiff a baseless demand letter so they could retain Ms. Dexter as their main
2    model.

3        42.    Ms. Dexter is well known in the apparel modeling industry for her unique look
4    and her image had come to be associated with Stop Staring! in the minds of the
5    consuming public.  As a result, Plaintiff was forced to remove all images of Ms. Dexter
6    from its website as well as those images posted on third party retailer sites in an attempt
7    to avoid any confusion which might ensue.

8        43.    Defendants' actions in conspiring to force Plaintiff to release Ms. Dexter so
9    they could hire her themselves evidences yet another attempt by Defendants to hijack
10   Plaintiff's identity and exploit the goodwill associated with its mark.

11       44.    Finally, and most egregiously, as early as August 2008, Defendants have been
12   directly infringing upon the Stop Staring! mark.  During a routine check of search engine
13   rankings, Plaintiff learned for the first time that Defendants were publicly hosting a
14   "html" web page entitled <www.bettiepageclothing.com/directory/**stop-staring-**
15   **clothing.html**> under the "directory" subfolder of their own website
16   <www.bettiepageclothing.com>.  True and correct copies of Defendants website and
17   several online search engine print-outs are attached hereto as **Exhibit F** and **G**
18   respectively.

19       45.    By physically placing Plaintiff's mark as a website "url" under their domain
20   name, Defendants are effectively infringing upon the Stop Staring! name in a manner
21   reasonably calculated to divert initial consumer interest to their own website and achieve
22   higher search engine rankings.  Defendants engaged in such conduct in a clear and
23   obvious attempt to: 1) confuse consumers into believing that they are somehow
24   associated or affiliated with Plaintiff; and/or 2) to confuse consumers into believing that
25   they are entering a site where Stop Staring! products are sold such that a sizeable number
26   originally looking for Plaintiff's products will simply decide to remain on Defendants'
27   site and purchase Defendants' confusingly similar offerings instead.

28

46.     Under either of the scenarios set forth above, by using the text "Stop Staring Clothing" to divert those consumers looking for Stop Staring! items, Defendants have improperly benefited from the goodwill that Plaintiff has developed in its mark. Defendants' actions in this regard amount to trademark infringement and initial interest confusion.

47.     Moreover, by creating an operation which in essence is a mirror image of Stop Staring!, Defendants have diluted the most important thing an apparel company can possess – its originality.  Not to mention, Defendants' reproductions are of an inferior quality to that of Plaintiff.

48.     As a direct and proximate result of the foregoing actions, Plaintiff's image and reputation has been compromised and Plaintiff has been forced to exhaust a substantial amount of money and time to differentiate itself from Defendants in an effort to avoid consumer confusion which may have otherwise occurred, and which may continue to occur in the future.

**COUNT I.**

**FEDERAL TRADEMARK INFRINGEMENT**

**(Against all Defendants)**

49.     Plaintiff hereby incorporates by reference and realleges each of the allegations contained in paragraphs 1 through 48 above, as though fully set forth herein.

50.     Plaintiff is the legal owner of the trademark STOP STARING! used in connection with women's apparel (Reg. No. 2,709,522).

51.     Plaintiff's mark is nationally recognized, including within the Central District of California, as being affixed to goods and merchandise of the highest quality.

52.     Defendants' use of Plaintiff's trademark as set forth above constitutes direct trademark infringement under the Lanham Act and creates initial interest confusion.

53.     At no time did Defendants have the authorization, legal right, or consent to engage in such activities in total disregard of Plaintiff's rights.

54.   By means of the actions complained of herein, Defendants, and each of them, have misappropriated Plaintiff's acquired goodwill and have willfully and intentionally infringed and continue to infringe Plaintiff's trademark.

55.   Defendants' actions are likely to result in confusion, mistake or deception, and are likely to cause the public to believe that Plaintiff has produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to Plaintiff's detriment.

56.   Defendants' actions complained of herein were deliberate and intentional.

57.   As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiff has been injured and will continue to suffer injury to its business and reputation unless Defendants are restrained by this Court.

58.   Plaintiff has no adequate remedy at law.

59.   Plaintiff is likely to prevail in its claims of trademark infringement against Defendants and is thereby entitled to an injunction restraining Defendants, and all persons acting in concert with them, from engaging in such further violations of the trademark laws.

60.   Plaintiff is further entitled to recover the damages, including attorneys' fees, it has sustained as well as Defendants' gains, profits and advantages obtained as a result of the infringing acts as alleged herein, and costs of this action pursuant to 15 U.S.C. 1117(a).

## COUNT II.

## FEDERAL TRADE DRESS INFRINGEMENT

### (Against all Defendants)

61.   Plaintiff hereby incorporates by reference and realleges each of the allegations contained in paragraphs 1 through 60 above, as though fully set forth herein.

62.   Plaintiff has created and owns distinctive trade dress in its Stop Staring! line of products, incorporating the designs and appearance of the items themselves as well as all the additional elements used to create the total visual image by which Plaintiff's products are presented to the consuming public.  Plaintiff's trade dress is essentially its total image, appearance and overall look and feel.

63.   Plaintiff's trade dress is inherently distinctive and non-functional.

64.   Plaintiff's trade dress has acquired secondary meaning as a source identifier in the minds of the consuming public as demonstrated by Defendants' copying thereof.

65.   By the acts and omissions set forth above, Defendants have infringed and continue to infringe Plaintiff's rights regarding its trade dress, in violation of Lanham Act §43(a), 15 U.S.C. §1125(a).   Defendants have intentionally and knowingly engaged in the foregoing unlawful conduct in a continued effort to reproduce and replicate the total visual image which Plaintiff utilizes to present its products to the consuming public.

66.   Defendants' trade dress as it is used in commerce has the same overall look and feel as that belonging to Plaintiff and is confusingly similar thereto.  Defendants' infringing activity includes using the same or confusingly similar garment designs and styles to those created by Plaintiff and using the same or confusingly similar promotional techniques as those employed by Plaintiff, including but not limited to using the same or similar color tones, same or similar graphic designs, same or similar layouts, same or similar photo backgrounds, same or similar themes, same or similar models,  same or similar photo shoot hair and makeup, and same or similar product descriptions on their website, advertising publications and product packaging.

67.   Defendants' conduct is likely to cause, and has indeed caused, confusion, mistake, and/or deception among the general purchasing public, and is likely to interfere, and has indeed interfered, with Plaintiff's ability to use its trade dress to indicate a single quality controlled source of goods.

68.     Defendants' actions complained of herein were deliberate and intentional.

69.     As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiff has been injured and will continue to suffer injury to its business and reputation unless Defendants are restrained by this Court.  Defendants acts have diluted the uniqueness of Plaintiff's business and trade dress and have forced Plaintiff to exhaust a substantial amount of money and time in an effort to avoid consumer confusion by differentiating itself from Defendants.

70.     Plaintiff has no adequate remedy at law.

71.     Plaintiff is likely to prevail in its claims of trade dress infringement against Defendants and is thereby entitled to an injunction restraining Defendants, and all persons acting in concert with them, from engaging in such further violations of the trademark laws.

72.     Plaintiff is further entitled to recover the damages, including attorneys' fees, it has sustained as well as Defendants' gains, profits and advantages obtained as a result of the infringing acts as alleged herein, and costs of this action pursuant to 15 U.S.C. 1117(a).

## COUNT III.

## FRAUD

### (Against all Defendants)

73.     Plaintiff hereby incorporates by reference and realleges each of the allegations contained in paragraphs 1 through 72 above, as though fully set forth herein.

74.     As detailed above, Defendants represented to Plaintiff that they were in the process of opening a women's boutique in Las Vegas and wanted to establish a business relationship with Plaintiff whereby Defendants would be a wholesale retailer of Stop Staring! garments.  Over the course of several months, JAN and TATYANA repeatedly represented that the parties had established a solid business relationship and the venture was in full swing.

75.   In reliance therewith, Plaintiff was induced to, and did in fact, agree to work with Defendants and disclosed confidential information about its operation and business methods.

76.   Plaintiff's reliance was justified under the circumstances.

77.   Plaintiff is informed and believes that Defendants representations were false in that they never intended to establish a business relationship with Plaintiff and only made such representations in order to receive confidential information and disclosures from Plaintiff and to use Plaintiff and its goodwill to secure the lease in Desert Passage and the rights to the Bettie Page name.

78.   Plaintiff is informed and believes that when Defendants made the above representations, they knew them to be false and made said representations with the intention to deceive and defraud Plaintiff, and induce Plaintiff to act in reliance thereon in the manner herein alleged.

79.   At the time these representations were made by Defendants and when Plaintiff took the actions herein alleged, Plaintiff was ignorant of the falsity of Defendants' representations and believed them to be true.

80.   Said representations were of a material importance in that Plaintiff would not have taken the actions herein alleged if not for the specific false representations made by Defendants.  Had Plaintiff known the actual facts, it would not have taken such action.

81.   As a direct and proximate result of Defendants' fraudulent actions, Plaintiff has suffered significant damages in an amount to be proven at trial but not less than the jurisdictional limits of this court.  Furthermore, the aforesaid conduct of Defendants, and each of them, was despicable conduct that subjected Plaintiff to an unjust hardship, in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages according to proof.

## COUNT IV.

## MISAPPROPRIATION OF TRADE SECRETS

### (Against all Defendants)

82.     Plaintiff hereby incorporates by reference and realleges each of the allegations contained in paragraphs 1 through 81 above, as though fully set forth herein.

83.     Commencing in 2007, Plaintiff is informed and believes that Defendants misappropriated its confidential information and trade secrets in connection with the launch of a directly competing apparel business under the designation Bettie Page Clothing.

84.     As detailed above, Defendants gained access to Plaintiff's confidential information and trade secrets under the false pretense of a business relationship existing between the parties.

85.     In doing so, Defendants secretly took steps to set up a company to compete against Plaintiff, intentionally copying the distinctive look and feel of Stop Staring! garments, including Stop Staring!'s overall trade dress, trade secrets and proprietary business information.  Defendants' even used Plaintiff's own products to secure their lease in Las Vegas at the shops in Desert Passage at the Aladdin.

86.     Plaintiff's trade dress includes the distinctive appearance, look and feel, and display of its products.  The shape, cut and fit of its garments are unique.  The texture of its fabrics and the originality of its designs are identifiable in the marketplace.

87.     Plaintiff's success is also predicated on confidential information it has gathered over the years, including details regarding its customers and retailers, its vendors and suppliers of fabric, its financial statements, costs and expenses, its independent cutting and sewing contractor identities, its independent model identities, its product placement, price points, and marketing strategies, as well as its overall business procedures and practices.

88.     A competitor that acquires this information secures for itself a significant, unfair advantage.  Such information constitutes a roadmap to the manufacturing, pricing and marketing of copycat merchandise.  Moreover, using this information allows a competitor to know exactly how to undercut Plaintiff's pricing with similar products.

89.     Plaintiff is informed and believes that Defendants misappropriated the above-referenced information and trade secrets in order to create their own competing business which happens to produce retro-inspired garments with a look and feel almost interchangeable to products sold by Plaintiff, utilizing the same or similar designs, dimensions, proportions, fabrics, cuts, sewing methodology and marketing techniques.

90.     Moreover, Plaintiff is informed and believes that on multiple occasions Defendants solicited Plaintiff's sewers, cutters, and other individuals having access to Plaintiff's proprietary designs, in an attempt to obtain their services and disclosure of their intimate knowledge of Stop Staring!'s inner workings.

91.     In doing so, Defendants are causing Plaintiff immediate and irreparable harm which cannot be fully compensated by the recovery of economic damages.  Unless restrained, Defendants misappropriation will continue to cause irreparable harm to Plaintiff for which there is no adequate remedy at law.

92.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered significant damages in an amount to be proven at trial but not less than the jurisdictional limits of this court.  Furthermore, the aforesaid conduct of Defendants, and each of them, was despicable conduct that subjected Plaintiff to an unjust hardship, in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages according to proof.

## COUNT V.
## COMMON LAW UNFAIR COMPETITION
### (Against all Defendants)

93.     Plaintiff hereby incorporates by reference and realleges each of the allegations contained in paragraphs 1 through 92 above, as though fully set forth herein.

94.     Plaintiff owns and enjoys common law trademark rights in California and throughout the United States.

95.    Defendants' actions complained of herein were deliberate and intentional and constitute unfair competition under California common law.

96.    Plaintiff has been irreparably harmed and will continue to be irreparably harmed as a result of Defendants' unlawful acts unless enjoined by this Court.

97.    The conduct herein complained of was extreme, outrageous, fraudulent, and was inflicted on Plaintiff in reckless disregard of Plaintiff's rights.  Said conduct was despicable and harmful to Plaintiff and as such supports an award of exemplary damages in an amount sufficient to punish Defendants and deter them from similar conduct in the future.

98.    Plaintiff is entitled to an injunction restraining Defendants, and all persons acting in concert with them, from engaging in such further acts of unfair competition.

99.    Plaintiff is further entitled to recover the damages, including attorneys' fees, it has sustained as well as Defendants' gains, profits and advantages obtained as a result of the infringing acts as alleged herein, and costs of this action pursuant.

## COUNT VI.

## CALIFORNIA UNFAIR COMPETITION

### (Against all Defendants)

100.    Plaintiff hereby incorporates by reference and realleges each of the allegations contained in paragraphs 1 through 99 above, as though fully set forth herein.

101.    Plaintiff is informed, believes, and thereupon alleges that Defendants' conduct as described herein was, and is, unlawful, unfair and/or fraudulent in violation of Section 17200 *et. seq.* of the California Business and Professions Code and has the potential to cause, and has in fact caused, confusion in the marketplace.

102.    Plaintiff has been irreparably harmed and will continue to be irreparably harmed as a result of Defendants' unlawful acts unless enjoined by this Court.

103.    The conduct herein complained of was extreme, outrageous, fraudulent, and was inflicted on Plaintiff in reckless disregard of Plaintiff's rights.  Said conduct was despicable and harmful to Plaintiff and as such supports an award of exemplary damages in an amount sufficient to punish Defendants and deter them from similar conduct in the future.

104.    Plaintiff is entitled to an injunction restraining Defendants, and all persons acting in concert with them, from engaging in such further acts of unfair competition.

105.    Plaintiff is further entitled to recover the damages, including attorneys' fees, it has sustained as well as Defendants' gains, profits and advantages obtained as a result of the infringing acts as alleged herein, and costs of this action pursuant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment in its favor and against the Defendants as follows:

1.    That the Defendants be held to have infringed Plaintiff's trademark;

2.    For injunctive relief ordering Defendants to cease any and all further acts of infringement and/or unfair competition;

3.    For Plaintiff's actual damages along with Defendants' profits attributable to their unlawful conduct according to proof, in an amount up to $1,000,000.00;

4.    For an Order requiring Defendants to account for and relinquish to Plaintiff all gains, profits, and advantages derived by Defendants through their infringement and/or unfair competition;

5.    For an Order requiring that all gains, profits, and advantages derived by Defendants through their infringement of Plaintiff's trademark and/or unfair competition be deemed to be held in constructive trust for the benefit of Plaintiff;

6.    For Plaintiff's attorneys' fees and costs of this action;

7.    For punitive and exemplary damages in an amount up to $1,000,000.00; and

8.    For such further and additional relief as the Court may deem just and proper, including pre-and post-judgment interest.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues triable by a jury.

DATED: March 24, 2009                          **BEITCHMAN & ZEKIAN, P.C.**

                                               Todd E. Chvat,
                                               Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STOP STARING! DESIGNS, a California corporation<br><br>PLAINTIFF(S)<br><br>V.<br><br>TATYANA, LLC, a Nevada corporation d/b/a BETTIE PAGE CLOTHING; TATYANA KHOMYAKOVA, an individual; JAN GLASSER, an individual; and DOES 1 through 10, inclusive<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV09-02014 DSF (AJWx)<br><br><br>**SUMMONS** |

TO:     DEFENDANT(S):  <u>TATYANA, LLC; TATYANA KHOMYAKOVA; JAN GLASSER</u>.

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, <u>Todd E. Chvat</u>, whose address is <u>510 W. 6th Street, Penthouse 1220, Los Angeles, CA 90014</u>.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:     MAR 2 4 2009

By: _____
                    Deputy Clerk

                    *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) STOP STARING! DESIGNS, a California corporation | DEFENDANTS TATYANA, LLC, a Nevada corporation d/b/a BETTIE PAGE CLOTHING; TATYANA KHOMYAKOVA, an individual; JAN GLASSER, an individual; and DOES 1 through 10, inclusive |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) Todd E. Chvat, SBN 238282      TEL: (213) 488-1115 Beitchman & Zekian, APLC 510 W. 6th Street, Ph 1220, Los Angeles, CA 90014 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No      ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Federal Trademark Infringement; Trade Dress Infringement; Fraud; Misappropriation of Trade Secrets; Common Law Unfair Competition; California Law Unfair Competiti

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce ICC Rates etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☑ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

## CV09-02014

FOR OFFICE USE ONLY:   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | NEVADA |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     Note: **In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date  3/24/09

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |