Peter R. Afrasiabi (Bar No. 193336)
E-mail: pafrasiabi@onellp.com
Christopher W. Arledge (Bar No. 200767)
E-mail: carledge@onellp.com
Imran F. Vakil (Bar No. 248859)
E-mail: ivakil@onellp.com
**ONE LLP**
4000 MacArthur Boulevard
West Tower, Suite 1100
Newport Beach, California 92660
Telephone:   (949) 502-2870
Facsimile:    (949) 258-5081

Attorneys for Defendants/Counterclaimants
TATYANA, LLC d/b/a BETTIE PAGE
CLOTHING, TATYANA KHOMYAKOVA,
and JAN GLASSER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STOP STARING! DESIGNS, a California corporation;<br><br>            Plaintiff,<br><br>    vs.<br><br>TATYANA, LLC, a Nevada Corporation d/b/a BETTIE PAGE CLOTHING; TATYANA KHOMYAKOVA, an individual;  JAN GLASSER, an individual; and Does 1 through 10, inclusive,<br><br>            Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. CV09-2014 DSF (AJW)<br>Assigned for all purposes to:<br>Hon. Dale S. Fischer<br><br>**DEFENDANTS NOTICE OF MOTION AND MOTION TO BIFURCATE TRADEMARK INFRINGEMENT**<br><br>**[PROPOSED ORDER FILED CONCURRENTLY HEREWITH]**<br><br>**Date:  January 10, 2011**<br>**Time:  1:30 p.m.** |

18000.1

**DEFENDANTS NOTICE OF MOTION AND MOTION TO BIFURCATE**

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 10, 2011 at 1:30 p.m. or as soon thereafter as the matter may be heard before the Honorable Dale S. Fischer, Defendants Tatyana, LLC d/b/a Bettie Page Clothing, Design Technology Group, LLC, Tatyana Khomyakova, and Jan Glasser (collectively, "Defendants") will and hereby do move this Court for an order bifurcating the trademark infringement for a separate, bench trial. The trademark claim cannot be tried to the jury, and trying that claim separately to the Court will not only be more efficient but will also avoid likely unfair prejudice to Defendants.

This motion is based on the attached Memorandum of Points and Authorities, the Declaration of Christopher Arledge, the Declaration of Jessie Stricchiola, the arguments of the parties, and all other documents previously filed with the Court in this action.

Counsel for Defendants has already discussed this motion with Keith Wesley, counsel for Plaintiff, and informed Mr. Wesley that Defendants would be moving to bifurcate the trademark claim from the others for purposes of trial.

Dated: December 13, 2010         **ONE LLP**

By: /s/Christopher W. Arledge
Christopher W. Arledge
Attorneys for Defendants / Counterclaimants

18000.1

1

**NOTICE OF MOTION AND MOTION TO BIFURCATE**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Court significantly narrowed this case in its summary judgment ruling. Only four of Plaintiff's claims remain. Of the four, three must be tried to the jury. The fourth—Plaintiff's claim for trademark infringement, in which Plaintiff is limited merely to a request for injunctive relief—must be tried to this Court. Defendants hereby move to have the trademark infringement claim bifurcated and tried separately. Not only can that claim not be tried to the jury, but putting evidence of that claim before the jury would be unduly prejudicial and confusing, and it will be simple and efficient to try the matter separately immediately after the conclusion of the jury trial on the other three claims.

## II. DESCRIPTION OF PLAINTIFF'S CLAIMS

Plaintiff has four basic claims remaining in this case: fraud, misappropriation of trade secrets, trade dress infringement, and trademark infringement. Plaintiff's third cause of action for false designation of origin and fourth cause of action for common law unfair competition are not really separate claims; both rest completely on the trademark and trade dress allegations in the first and second causes of action. Third Amended Complaint ("TAC") at ¶¶ 66, 74.

The four causes of action are based on alleged wrongdoing at three different time periods and concern three different factual circumstances.

### A. Early 2006: Fraud and Misappropriation of Trade Secrets

The fraud and trade-secret misappropriation claims arise out of alleged conduct in 2006, when the parties were in the process of negotiating a business relationship. These two claims are intimately related; indeed, post-summary judgment, they are practically identical. Plaintiff's trade-secret claim has been streamlined to a single allegation: Plaintiff alleges that the name "Bettie Page" is a trade secret that Defendants are misappropriating. *See* November 12, 2010 Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment ("MSJ Order") at 3. Plaintiff says that its owner, Alicia Estrada,

gave Defendants that name, but Plaintiff says she did so under false pretenses, fraudulently inducing Plaintiff into disclosing that name with representations of future business.

The fraud claim is now identical. Plaintiff alleges that because of Defendants' alleged fraud—Defendants allegedly promised to buy dresses from Plaintiff—Plaintiff disclosed confidential information to Defendants. But in its summary judgment papers, Plaintiff was unable to identify any valuable, secret information disclosed to Defendants, other than the "Bettie Page" name. MSJ Order at 3. For this reason, the Court narrowed the trade secret case to a claim solely about the "Bettie Page" name. There are no other examples of confidential, valuable information at issue in this case.

Thus, the fraud and trade secret claims are now virtually identical. In both claims, Plaintiff alleges that Defendants falsely represented that they would buy dresses from Plaintiff, and as a result, Plaintiff gave Defendants the idea to use the name "Bettie Page," which Plaintiff says is a valuable piece of information. Thus, both of these claims arise out of the parties' negotiations, and the alleged misconduct would have been completed no later than March 28, 2006, for at that time Defendants already knew about the "Bettie Page" name and had stated an intent to use it. *See* Declaration of Jan Glaser in Support of Summary Judgment Motion dated September 27, 2010 ("Glaser MSJ Decl."), Exh. M.

### B. Early 2007: Trade Dress Infringement

Plaintiff's trade dress claim rests on an allegation that Defendants used on their advertising materials a design style that Plaintiff had used on a former catalog and was still using on its then-current website. Plaintiff claims this style constitutes its protectable trade dress. The alleged acts relevant to the trade dress claim start in early 2007—about a year after the alleged acts relevant to the fraud and trade secret claims—when Defendants come out with their first catalog. This is the timeline:

- Approximately January 2004: Plaintiff updates its website and uses the alleged trade dress at issue. Arledge Decl. at ¶ 2.
- Fall 2004: Plaintiff uses the alleged trade dress at issue on its catalog. Declaration of James Atyeo ("Atyeo Decl.").

- Spring 2005: Plaintiff stops using the alleged trade dress on its catalog and does not again use the alleged trade dress on any of its bi-annual catalogs thereafter.  Atyeo Decl.
- Mid 2007: Defendants release their first catalog.  (Plaintiff claims the style of this catalog is confusingly similar to its trade dress.)  Declaration of Jan Glaser ("Glaser Decl.") at ¶ 2.
- Approximately November 2007: Plaintiff stops using the alleged trade dress on its website.  Arledge Decl. at ¶ 2.
- Mid 2008: Defendants revise their website.  Glaser Decl. at ¶ 2.  (Plaintiff claims the style of the new website is confusingly similar to its trade dress—trade dress it is no longer using.)

**C.     Late 2008: Trademark Infringement**

Plaintiff's trademark claim is based on Defendants' use of the "stop staring" mark on a couple places on the Bettie Page Clothing website from September 2008 to December 2008.  The facts here are discreet and unrelated—temporally and substantively—to the alleged facts underlying the other claims.  Defendants concede they wanted to use "stop staring" as a keyword to drive traffic to their site but that they wanted the words to remain hidden from the viewer.  Glaser MSJ Decl. at ¶ 18.  Defendants' SEO company, however, put the words in two places where they could be seen by website visitors.  *Id.* at ¶¶ 18-20.  In December 2008, "stop staring" had appeared on Defendants' website for four months.  *Id.*  Defendants had not heard any complaints from Plaintiff, even though we know now that Plaintiff found the links no later than November 2008.  *Id.*  Defendant Jan Glaser discovered himself that "stop staring" was visible on the site in December, and he immediately instructed his search engine optimization people to take it down.  *Id.*  They did.  *Id.*

In the time the "stop staring" mark appeared on the Bettie Page Clothing website, no more than a few hundred people clicked on the relevant pages of the website—0.063% of the total traffic to the site during the relevant time period.  *See* Declaration of Jessie

1 Stricchiola ("Stricchiola Decl."), Exh. 1 at 12. Not one of those visitors went on to
2 purchase product from Bettie Page. *Id.* The terms have not appeared on the website—or
3 any other Bettie Page advertising materials—since, and Defendants have made clear that
4 they never will. Glaser MSJ Decl. at ¶ 20.

### III. THE TRADEMARK CLAIM MUST BE TRIED TO THE COURT

Plaintiff is limited to a request for injunctive relief on its trademark claim. MSJ Order at 5. Therefore, Plaintiff does not have a right to a jury trial. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010) ("Finally, we consider the Tabaris' claim that the district court deprived them of their right to a trial by jury when it failed to empanel a jury to decide Toyota's trademark claims. Because Toyota only sought an injunction, the district court did not err by resolving its claims in a bench trial."). The Court must decide the issue. *See* FRCP 39(c)(2) (Where there is no right to a jury trial, a jury can decide a claim only by stipulation of the parties).

### IV. ISSUES RELEVANT TO THE TRADEMARK CLAIM ARE NOT RELEVANT TO THE OTHER CLAIMS

In determining whether Plaintiff is entitled to injunctive relief, this Court must analyze the traditional, four-factor test: "(i) whether the plaintiff would face irreparable injury if the injunction did not issue, (ii) whether the plaintiff has an adequate remedy at law, (iii) whether granting the injunction is in the public interest, and (iv) whether the balance of the hardships tips in the plaintiff's favor." *See Mercexchange, L.L.C. v. eBay, Inc.*, 275 F.Supp.2d 695, 711 (E.D.Va. 2003) (the district court's formulation of the test noted approvingly in *eBay Inc. v. Mercexchange, L.L.C.*, 547 U.S. 388, 393 (2006)).

The facts necessary to this determination are irrelevant to the other causes of action. For example, whether Plaintiff needs an injunction to avoid irreparable injury depends on the resolution of two issues. First, did Defendants' prior use of the "stop staring" mark on the website cause any harm? For if it did not, it is impossible to conclude that the prior use will cause harm in the future, and it is highly unlikely that a similar, future, hypothetical use would cause harm either. The analysis of the harm caused by Defendants' use of the

mark hinges on an analysis by expert Jessie Stricchiola and the underlying Google Analytics data, which shows that very few people ever visited the pages of the Bettie Page Clothing website where the words "stop staring" could be found, and none of those visitors went on to purchase product from Defendants. *See* Stricchiola Decl., Exh. 1 at 12.

Second, is there any reason to conclude that Defendants would use the "stop staring" mark in the future? Defendants voluntarily removed the "stop staring" references from the Bettie Page Clothing website when they discovered it, well before this lawsuit was filed. Glaser MSJ Decl. at ¶ 20. They never received notice or a demand from Plaintiff (or anybody else) to remove the words "stop staring" (even though Plaintiff had already discovered those links). *Id.* Defendants' voluntary removal of the mark from the website and clear statement that they have not used it since and will not use it again is powerful, and undisputed, evidence that an injunction is not necessary and not appropriate. *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir. 1969) (where defendant had abandoned infringement and there was little or no evidence that it would be resumed, the district court acted appropriately in denying injunctive relief); *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 827 (9th Cir. 1997) (declaratory judgment claim moot where defendant announced it would rename its stores); *Hendrickson v. Ebay Inc.*, 165 F.Supp.2d 1082, 1095 (C.D. Cal. 2001) (request for injunctive relief was moot where the allegedly infringing advertisement was no longer running and defendant had made clear it had no intention of running it in the future); *Brown v. Armstrong*, 957 F.Supp. 1293, 1303 n.8 (D. Mass. 1997) (request for injunctive relief denied as moot where offending commercials were no longer running and there was no intention to run them in the future).

Moreover, Plaintiff's failure even to make a demand that its mark be removed from the Bettie Page Clothing website is powerful evidence that even Plaintiff believed it was not being harmed. Glaser MSJ Decl. at ¶ 20.

Note that neither of these issues has any relevance whatsoever to the issues to be tried to the jury, such as whether Defendants defrauded Plaintiff in 2006. The number of

visitors to the pages of Bettie Page's website where "stop staring" appeared does not relate to whether Defendants lied about an intent to buy dresses from Plaintiff. The likelihood that Defendants will put "stop staring" on their website in the future in no way relates to whether Plaintiff has trade dress in certain shapes or colors or to whether Defendants' website and catalogs have confusingly similar trade dress.

The other factors to be considered in a request for injunctive relief are also irrelevant to Plaintiff's jury claims. The second factor asks whether there is an adequate remedy at law. There must be, since there were no damages here and therefore no harm to remedy. Stricchiola Decl., Exh. 1 at 12. But this issue—however it is resolved—is irrelevant to whether Defendants' were negotiating with Plaintiff in good faith two years earlier, or whether Plaintiff provided Defendants with the name "Bettie Page," or whether Plaintiff abandoned its alleged trade dress. The same is true of the remaining factors—the public's interest in an injunction and the balance of hardships. There is simply no overlap between the facts relevant to the trademark claim and the facts underlying the other claims. The alleged trademark infringement came substantially later, and the facts underlying it are discreet and unrelated to the negotiations between the parties or the colors and shapes chosen for Defendants catalog or website. Simply put, the jury does not need to hear any of the facts relevant to the trademark claim in order to decide the issues before it.

## V. THE TRADEMARK MATTER SHOULD BE TRIED SEPARATELY, IF AT ALL

Thus far, two points should be clear. First, the trademark claim will be tried to the Court, not the jury. Second, the jury does not need any of the evidence relevant to the request for injunctive relief under the trademark claim to decide the other causes of action.

Two more points are critical: (1) it is permissible and will be easy and efficient for the Court to try the trademark claim, if at all, after the other claims are tried to the jury; and (2) allowing the jury to hear the evidence necessary to the trademark claims would be harmful and prejudicial.

**A.   The Court can efficiently try the trademark claim after conclusion of the jury trial**

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Federal Rules of Civil Procedure Rule 42(b). A district court has "broad discretion" in deciding whether to bifurcate a trial under this rule. *See, e.g., M2 Software, Inc. v. Madacy Entertainmen*, 421 F.3d 1073, 1088 (9th Cir. 2005) (trial courts have "broad discretion" and their decisions will be reviewed only for an abuse of discretion).

Here, the Court has every reason to exercise its discretion and bifurcate the trademark claim from the other claims. The evidence relevant to the trademark claim is limited, probably involving just a couple of witnesses. Jan Glaser and possibly a representative of Defendants' search engine optimization company can testify about what went on the website and why. Arledge Decl., ¶ 3. Glaser will testify why Defendants removed the references unilaterally and why they will never appear again. *Id.* Defendants' expert, Jessie Stricchiola, will testify about the number of visitors who saw the pages that had "stop staring" on them and whether any of those visitors purchased product. *Id.* (They didn't.) This is an hour or two of testimony. *Id.* It can be done while the jury is deliberating or at any other time convenient for the Court. *Id.*

**B.   It would be confusing and prejudicial to allow the jury to hear the trademark claim testimony**

There is only one reason why Plaintiff would insist on putting the trademark-claim evidence before the jury, and it has nothing to do with efficiency or relevancy. Plaintiff wants to take evidence of wrongdoing in one area—trademark, where there was no resulting damage—and use it to prove its other, unrelated claims. *Id.* at ¶ 4. This would be inappropriate, since evidence of one example of wrongdoing should not be used to prove an alleged, unrelated act of wrongdoing. *See* Federal Rules of Evidence Rules 403, 404(b). It would be grossly unfair for Defendants to be found liable for fraud, misappropriation of

trade secrets, or trade dress infringement because Plaintiff had managed to poison the well with evidence of the wrongful (though ultimately harmless) use of Plaintiff's trademark.

Moreover, trying the trademark claim with the others is likely to confuse the jury. The jury will not be asked to decide the trademark claim, but if they hear evidence of trademark infringement, they may be inclined to use it somehow, even where it is not appropriate. Arledge Decl. at ¶ 5. This is especially true because the jury is likely to confuse trademark and trade dress. Although trademark and trade dress are distinct legal theories, they are sufficiently similar that jurors who are not familiar with intellectual property might struggle to keep them straight. And if they have trouble distinguishing the two claims, they could award damages under *trade dress* for actions that constituted only *trademark* infringement that this Court already concluded could not give rise to a damages claim.

### C. A trademark trial is unnecessary

In reality, it is clear that permanent injunctive relief is not available here. As shown above, Plaintiff would not be subjected to irreparable harm absent an injunction. The undisputed evidence shows that a tiny number of visitors ever made it to the portions of the Bettie Page Clothing website where "stop staring" could temporarily be seen, and none of those visitors ever purchased produce from Defendants. Stricchiola Decl., Exh. 1. Moreover, Defendants voluntarily removed the "stop staring" references without receiving any notice or demand to do so from Plaintiff or anybody else, and they have clearly maintained that they will not use that mark on the website or other advertising materials in the future. Glaser MSJ Decl. at ¶ 20. Absent a reason to conclude that future use of the mark is likely, there is no basis for a permanent injunction. *Volkswagenwerk*, 411 F.2d at 352; *Stephen W. Boney, Inc.*, 127 F.3d at 827; *Hendrickson*, 165 F.Supp.2d at 1095; *Brown*, 957 F.Supp. at 1303 n.8.

Plaintiff fares no better on the other factors. Is there an adequate remedy at law? There must be, since there has been no harm. Stricchiola Decl., Exh. 1 at 12; MSJ Order at 5. And in light of the complete lack of harm and lack of evidence that any future use of the

mark by Defendants will occur, the public certainly has no interest in an injunction, and the balance of hardships does not tip in Plaintiff's favor. *In re Circuit Breaker Litigation*, 860 F.Supp. 1453, 1455 (C.D. Cal. 1994) ("Courts are more willing to grant a permanent injunction if the infringement caused substantial injury.").

Even so, Defendants would stipulate to an injunction and have said so, merely because they have no desire to use "stop staring" in their advertising in any way.  Arledge Decl. at ¶ 6.  The only condition Defendants have placed on their offer is that the parties bear their own fees and costs on this claim. *Id*.  This is hardly a stringent requirement in light of the fact that Plaintiff has suffered no damages, Defendants could likely be prevail on Plaintiff's request for injunctive relief, and under these facts, Plaintiff could never prove this is an "exceptional" case justifying fees.  But Plaintiff is unwilling to accept Defendants' offer of an injunction. *Id.*  Plaintiff intends to force a trial on this Court despite being offered relief to which it is not entitled so it can chase an unlikely recovery of attorneys' fees.  This Court should not waste judicial resources on a trial that is being fought solely so Plaintiff can eventually make a meritless request for attorneys' fees.

## VI.   CONCLUSION

If this Court concludes that a trial on the trademark claim is necessary, it should bifurcate that claim and try it separately.  It will be easy and efficient to do so, and bifurcating the trademark claim will avoid the very real possibility of jury confusion and unfair prejudice.

Dated:  December 13, 2010           **ONE LLP**

By:   /s/Christopher W. Arledge
Christopher W. Arledge
Attorneys for Defendants / Counterclaimants

## DECLARATION OF CHRISTOPHER ARLEDGE

I, Christopher Arledge, declare as follows:

1. I am counsel of record for Defendants in this action. I have personal knowledge of the facts stated herein and, if called to do so, could and would testify competently thereto.

2. The trade dress claim concerns one catalog each belonging to Plaintiff and Defendants and one version of each company's website. James Atyeo, one of the co-owners of Stop Staring! Designs, submitted a declaration which was filed concurrently with Defendants' moving papers. That declaration shows that Plaintiff used a catalog with the alleged trade dress one time – in the fall of 2004 – and has not used it on a catalog since. Plaintiff alleges that Defendants' catalog three years later, in mid 2007, used similar trade dress. (*See* the Declaration of Jan Glaser.) Because Plaintiff has not yet been able in deposition to provide specific dates for the changes to its website, we have used archive.org to approximate the major changes to the site. January 2004 is when archive.org first shows Plaintiff's website using colors and shapes that Plaintiff now alleges are part of its trade dress. It also shows that in November 2007 Plaintiff changed its design entirely and did not use the material it now claims as trade dress. Defendants did a website re-design about a half year after Plaintiff had stopped using its alleged trade dress on its website, in mid 2008, when Defendants started using colors and designs that Plaintiff now says are infringing.

3. Here, the Court has every reason to exercise its discretion and bifurcate the trademark claim from the other claims. The evidence relevant to the trademark claim is limited, probably involving just a couple of witnesses. Jan Glaser and possibly a representative of Defendants' search engine optimization company can testify about what went on the website and why. Glaser will testify why Defendants removed the references unilaterally and why they will never appear again. Defendants' expert, Jessie Stricchiola, will testify about the number of visitors who saw the pages that had "stop staring" on them and whether any of those visitors purchased product. (They didn't.) This is an hour or two

of testimony. It can be done while the jury is deliberating or at any other time convenient for the Court.

4. There is only one reason why Plaintiff would insist on putting the trademark-claim evidence before the jury, and it has nothing to do with efficiency or relevancy. Plaintiff wants to take evidence of wrongdoing in one area—trademark, where there was no resulting damage—and use it to prove its other, unrelated claims. This would be inappropriate, since evidence of one example of wrongdoing should not be used to prove an alleged, unrelated act of wrongdoing. *See* Federal Rules of Evidence Rules 403, 404(b). It would be grossly unfair for Defendants to be found liable for fraud, misappropriation of trade secrets, or trade dress infringement because Plaintiff had managed to poison the well with evidence of the wrongful (though ultimately harmless) use of Plaintiff's trademark.

5. Moreover, trying the trademark claim with the others is likely to confuse the jury. The jury will not be asked to decide the trademark claim, but if they hear evidence of trademark infringement, they may be inclined to use it somehow, even where it is not appropriate. This is especially true because the jury is likely to confuse trademark and trade dress. Although trademark and trade dress are distinct legal theories, they are sufficiently similar that jurors who are not familiar with intellectual property might struggle to keep them straight. And if they have trouble distinguishing the two claims, they could award damages under *trade dress* for actions that constituted only *trademark* infringement that this Court already concluded could not give rise to a damages claim.

6. Although Defendants do not believe Plaintiff is entitled to an injunction on the trademark claim, Defendants would stipulate to an injunction and have said so, merely because they have no desire to use "stop staring" in their advertising in any way. The only condition Defendants have placed on their offer is that the parties bear their own fees and costs on this claim. This is hardly a stringent requirement in light of the fact that Plaintiff has suffered no damages, Defendants could likely be prevail on Plaintiff's request for injunctive relief, and under these facts, Plaintiff could never prove this is an "exceptional" case justifying fees. But Plaintiff is unwilling to accept Defendants' offer of an injunction.

Plaintiff intends to force a trial on this Court despite being offered relief to which it is not entitled so it can chase an unlikely recovery of attorneys' fees. This Court should not waste judicial resources on a trial that is being fought solely so Plaintiff can eventually make a meritless request for attorneys' fees.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge. Executed this 13th day of December, 2010, at Newport Beach, California.

/s/Christopher W. Arledge
Christopher W. Arledge

17966.1

**DEFENDANTS NOTICE OF MOTION AND MOTION TO BIFURCATE**