BROWNE WOODS GEORGE LLP
Peter W. Ross (State Bar No. 109741)
  pross@bwgfirm.com
Keith J. Wesley (State Bar No. 229276)
  kwesley@bwgfirm.com
Cheryl Priest Ainsworth (State Bar No. 255824)
  cainsworth@bwgfirm.com
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff and Counterdefendant STOP STARING! DESIGNS, and Counterdefendant ALICIA ESTRADA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| STOP STARING! DESIGNS, a California corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>TATYANA, LLC, a Nevada corporation d/b/a BETTIE PAGE CLOTHING; TATYANA KHOMYAKOVA, an individual; JAN GLASER, an individual; DESIGN TECHNOLOGY GROUP LLC, a Nevada limited liability company d/b/a BETTIE PAGE CLOTHING, and Does 1 through 10, inclusive,<br><br>        Defendants.<br><br>TATYANA, LLC, a Nevada corporation d/b/a BETTIE PAGE CLOTHING,<br><br>        Counterclaimants,<br><br>vs.<br><br>STOP STARING! DESIGNS, a California corporation; ALICIA ESTRADA, an individual; and ROES 1-10, inclusive,<br><br>        Counterdefendants. | Case No. CV-09-02014 DSF (AJWx)<br><br>**DECLARATION OF KEITH J. WESLEY IN SUPPORT OF REPLY MEMORANDA IN SUPPORT OF PLAINTIFF STOP STARING! DESIGNS' MOTIONS IN LIMINE**<br><br>Judge: Hon. Dale S. Fischer<br>Date:  August 15, 2011<br>Time:  3:00 p.m.<br>Crtrm.: 840<br><br>Trial Date: August 30, 2011 |

291058.1

DECLARATION OF KEITH J. WESLEY IN SUPPORT OF REPLY MEMORANDA IN SUPPORT OF PLAINTIFF STOP STARING! DESIGNS' MOTIONS IN LIMINE

## DECLARATION OF KEITH J. WESLEY

1. I am an attorney at law, duly admitted to practice before all courts of the State of California. I am a partner in the law firm of Browne Woods George LLP, counsel of record for plaintiff and counter-defendant Stop Staring! Designs ("Stop Staring") and counter-defendant Alicia Estrada ("Estrada") in this action. I have first-hand, personal knowledge of the facts set forth below, and, if called as a witness, I could testify competently thereto.

2. Appended hereto as Exhibit 1 is a true and correct copy of excerpts from the transcript of the deposition of Catherine Garcia taken in this action.

3. After Stop Staring filed this case against Bettie Page Clothing, Bettie Page Clothing's licensor, CMG Brands, LLC, brought a lawsuit against Stop Staring for alleged violations of the right of publicity of Bette Davis – Los Angeles Superior Court Case No. BC431713. CMG brought the lawsuit without a warning such as a cease-and-desist letter or telephone call. CMG Brands was represented by the same attorneys who represent Bettie Page Clothing in this case. After CMG dismissed its case while Stop Staring's motion for summary judgment was pending, the Court entered judgment against CMG and in favor of Stop Staring for attorney's fees of $118,518.75 and costs in the amount of $2,325.00. Appended hereto as Exhibit 2 is a true and correct copy of the July 7, 2011 judgment in *CMG Brands v. Stop Staring! Designs*, Los Angeles Superior Court Case No. BC431713.

Executed this 8th day of August, 2011, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

/s/ Keith J. Wesley

# EXHIBIT 1

```
 1              UNITED STATES DISTRICT COURT
 2              CENTRAL DISTRICT OF CALIFORNIA
 3       ─────────────────────────
 4    STOP STARING DESIGNS, a California  )
 5    corporation,                         ) Case No.
 6                    Plaintiff,           ) CV 09-02014 DSF
 7         vs.                             ) VOLUME I
 8    TATYANA LLC, a Nevada corporation    )
 9    d/b/a BETTIE PAGE CLOTHING;          )
10    TATYANA KHOMYAKOW, an individual;    )
11    JAN GLASER, an individual; and       )
12    DOES 1 through 10, inclusive,        )
13                    Defendants.          )
14       ─────────────────────────────────)
15
16         Deposition of CATHERINE GARCIA, taken
17         at 550 South Hope Street, Los Angeles,
18         California, commencing at 1:55 P.M.,
19         Friday, June 11, 2010, before Harry
20         Hansen, CSR No. 4907.
21
22
23
24
25    PAGES 1 - 104
```

Page 1

EXHIBIT 1

```
 1      APPEARANCES OF COUNSEL:
 2
 3      FOR THE PLAINTIFF:
 4          BROWNE WOODS GEORGE LLP
 5          BY:  CHERYL PRIEST AINSWORTH, ESQ.
 6          2121 Avenue of Stars
 7          Suite 2400
 8          Los Angeles, California   90067
 9          (424) 202-5565
10
11
12      FOR THE DEFENDANTS:
13          ONE LLP
14          BY:  IMRAN F. VAKIL, Esq.
15          4000 MacArthur Boulevard
16          West Tower, Suite 1100
17          Newport Beach, California   92660
18          (949) 502-2876
19
20
21
22
23
24
25
                                              Page 2
```

```
 1                    CATHERINE GARCIA
 2      having been first placed under oath, testified as
 3      follows:
 4
 5                       EXAMINATION
 6      BY MR. VAKIL
 7          Q.   Ms. Garcia, have you ever taken a
 8      deposition before?
 9          A.   No, I haven't.
10          Q.   You know what a deposition is?
11          A.   No.
12          Q.   Let me try to explain it for you.
13               It's essentially a series of questions, a
14      question and answer period in which I will ask you a
15      certain number of questions and you're going to do
16      your best to respond to those questions and answer
17      to the best of your knowledge.
18               I'm entitled to you trying to give the
19      most accurate answers possible.  But in the event
20      that one of my questions is not clear or you don't
21      understand something that I'm saying, I'm going to
22      ask that you kindly stop me and ask me for some
23      clarification.
24               Do you understand up to this point?
25          A.   Yes, I do.
```

Page 3

```
 1   of the production and the day of the service of
 2   process of this lawsuit.
 3           I'm a little unclear as to the timing.
 4   I'd just like to understand a little bit better.
 5           Two people were served that day; is that
 6   correct?
 7       A.  I don't know.  I just know someone was
 8   served.  And from when I looked over it was Tatyana,
 9   Tatyana got served.
10       Q.  And the service is made during a
11   rehearsal?
12       A.  Pre-rehearsal before the main show.  And
13   it was really close to the main show starting.
14       Q.  Well, what's a pre-rehearsal?
15       A.  I'm sorry.  Rehearsal.
16       Q.  So either way --
17       A.  Yes.
18       Q.  -- it was during a rehearsal?
19       A.  Basically we run through every company's
20   presentation to make sure that they know their marks
21   on stage and they are aware of what they are doing
22   before the main show starts.  It's just like a
23   little practice so that they feel comfortable, they
24   know their marks, they know their timing.  And then
25   we go on to the next company and then we go on to
```

Page 87

```
 1   the next.
 2           So it's basically everyone gets a chance
 3   to be on stage ahead of time prior to the main show
 4   so that they feel more comfortable, correct.
 5       Q.   How did you find out about the service and
 6   process?
 7       A.   When they called security.
 8       Q.   I know you mentioned they called security.
 9   Did you say you had --
10       A.   Headsets.
11       Q.   -- headsets?
12           The headset.  Who did you hear saying call
13   security?
14       A.   My partner, assistant, Debbie Guidron.
15       Q.   Okay.
16           And was she telling you to call security?
17       A.   When we're on headsets, Debbie, myself,
18   are the only ones on headsets besides the main
19   casino crew.  So they are all on headsets because
20   they have their individual departments and they all
21   got to communicate with each other.
22           So we're on headsets to contact each
23   other, but then we can hear everyone else.  So
24   basically we're on the same ear set, we can hear
25   everything everyone's talking about.
```

1   So when Debbie called security, I heard
2   it, and everyone who had a headset was -- I don't
3   know who had it, but everyone heard it who had it
4   on.
5       Q.   Who was she telling to call security?
6       A.   She just said "I need security, I need
7   security now."
8       Q.   Okay.
9       A.   Yes.  It was just more like an
10  announcement, like, "I need security."  But none of
11  us knew why, we just all kind of met in the center
12  at the same time.  Which is the middle of the stage.
13      Q.   So as everybody was meeting at the middle
14  of the stage, nobody knew why they were there?
15      A.   Everybody was all in their rooms getting
16  ready to prep for the main show because we were
17  already asking everyone to get ready.  How that
18  happened, I don't know.  Debbie was the one right
19  there when that incident actually happened and when
20  she called security.  I got there at the end.
21           So I'm assuming, I'm not sure, because I
22  wasn't there, but I'm going to say that it's when
23  she was done with -- Tatyana was done with her
24  practice and I think she was going to head back, it
25  makes sense, because she was the last one to

Page 89

```
 1   showcase, so she was the last one to rehearse.  So
 2   after that, I mean --
 3        Q.   So that makes sense to you, but you don't
 4   know for sure that's --
 5        A.   It had to have been.  Because we go down
 6   the order as the show goes on.  So rehearsal is
 7   going to go exactly as the show is.  So if Bettie
 8   Page is the last one to showcase, then she's the
 9   last one to rehearse.  So that makes sense why she
10   was the last one out there.  That was already back
11   stage and that's when security was called.
12        Q.   Was there music playing at the time?
13        A.   I don't think so.  I think they were
14   getting ready to start the show, so it was quiet.
15        Q.   But Bettie Page was still on the stage?
16        A.   It was toward the end, yes.
17        Q.   So they were still in the practice?
18        A.   They were practicing, there was no -- It
19   was toward the end of her rehearsal.  It had to have
20   been because --
21        Q.   So you were playing music --
22        A.   I don't think --
23        Q.   -- during the practice?
24        A.   -- they did.  But when she called security
25   there was no -- When we got there, there was no
```

Page 90

```
 1    models there.  So I'm thinking it was already toward
 2    the end of her segment.  I don't know, I'd have to
 3    ask Debbie exactly, but --
 4         Q.   Okay.  But you didn't -- When you -- By
 5    the time you got there Tatyana had already been
 6    served, you didn't actually see her get served?
 7         A.   I didn't see her get served.  She already
 8    got served.
 9         Q.   And did you see her when she signed for
10    the papers?
11         A.   No.
12         Q.   Did you hear that she was shouting when
13    she signed the papers or causing a commotion?
14         A.   Debbie told me that Alicia was saying
15    stuff in the background.  What she was saying, I
16    don't know, except for that "there she is, there she
17    is."  And that's the only thing I recall.  Detail, I
18    need to ask Debbie.  Debbie was the one there.
19         Q.   But you don't recall Tatyana saying
20    anything?
21         A.   I wasn't there.
22         Q.   You just --
23         A.   And Debbie didn't tell me that part.  She
24    just told me who the problem -- when the problem
25    occurred, I guess.  And that's when she had to call
```

Page 91

```
 1   and she wasn't this for a while.  And then she was
 2   there again closer to the show.
 3        Q.   Did any of the vendors leave the show?
 4        A.   Not that I recall.
 5        Q.   Did any models leave the show?
 6        A.   Not that I recall.
 7        Q.   Did any makeup or hair people leave the
 8   show?
 9        A.   Everyone was there when I was checking in
10   the rooms, so I don't recall that either.
11        Q.   In fact I though I understood you -- I
12   thought that you testified earlier, but correct me
13   if I'm wrong, that, quote, no one else knew about
14   it, and you mentioned that your assistant, Debbie,
15   whose last name I don't want to butcher --
16        A.   Guidron.
17        Q.   -- Guidron, security and you, and then you
18   also just said anybody else who had the headsets
19   would have heard about security, but those are the
20   only people --
21        A.   That's it.
22        Q.   -- who really knew when it was happening?
23        A.   Correct.
24        Q.   Do you know if people didn't attend the
25   production because they heard that Bettie Page
```

Page 94

```
 1    had gotten served with a lawsuit?
 2         A.   The only two models that I know, and again
 3    how I found out about it, was the two models that I
 4    mentioned, which was Sabina Kelley and then it was
 5    Heidi Van Horne.  But they didn't show up.  So
 6    nobody actually left because of this.  As far as I
 7    know, everyone went along with their role and that
 8    was it.
 9         Q.   How did the show turn out?
10         A.   It was pretty good.  It was good.  We were
11    pretty happy.  We learned a lot of things even after
12    the situation and, you know, we're still fixing a
13    lot of things to make it a better production for
14    everyone.  But it was fun.  And everyone enjoyed it.
15    And that's why we're coming back again, hopefully.
16    We can continue this.
17         Q.   Have you ever spoken with Tatyana?
18              I think you testified that you had.
19         A.   Yeah, in the e-mail.  And I tried calling
20    her just prior to contacting Tom.  We wanted them to
21    go back to the show.  But then I talked to Tom and
22    he said it was better that we didn't get involved
23    and I said okay.
24         Q.   Have you ever spoken to her even in person
25    or on the phone?
```

Page 95

# EXHIBIT 2

Case 2:09-cv-02014-DSF-AJW   Document 185   Filed 08/08/11   Page 14 of 17   Page ID
#:2742

ORIGINAL FILED
JUL 0 7 2011
REC'D LOS ANGELES
JUL 06 2011 SUPERIOR COURT
FILING WINDOW

1  BROWNE WOODS GEORGE LLP
   Peter W. Ross (State Bar No. 109741)
2    pross@bwgfirm.com
   Keith J. Wesley (State Bar No. 229276)
3    kwesley@bwgfirm.com
   Cheryl Priest Ainsworth (State Bar No. 255824)
4    cainsworth@bwgfirm.com
   2121 Avenue of the Stars, Suite 2400
5  Los Angeles, California 90067
   Telephone: (310) 274-7100
6  Facsimile: (310) 275-5697

7  Attorneys for Defendants STOP STARING!
   DESIGNS and ALICIA ESTRADA

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| CMG BRANDS LLC,<br><br>Plaintiff,<br><br>vs.<br><br>STOP STARING! DESIGNS, a California corporation, and ALICIA ESTRADA, an individual,<br><br>Defendant. | Case No. BC 431713<br><br>Assigned for All Purposes to:<br>Hon. Elizabeth Allen White, Dept. 48<br><br>[PROPOSED] JUDGMENT<br><br>Judge: Hon. Elizabeth Allen White<br>Dept.: 48<br><br>Action Filed: February 11, 2010<br>Action Dismissed: January 24, 2011 |

284683.2

[PROPOSED] JUDGMENT

EXHIBIT 2

IT IS HEREBY ORDERED ADJUDGED AND DECREED that:

1. Plaintiff CMG Brands LLC shall pay Defendants Stop Staring! Designs and Alicia Estrada their reasonable attorney's fees of $118,518.75 and

2. Plaintiff CMG Brands LLC shall pay Defendants Stop Staring! Designs and Alicia Estrada their reasonable costs of this suit in the amount of $2,325.00.

Dated: JUL 0 7 2011

**Elizabeth Allen White**
The Hon. Elizabeth Allen White
Judge of the Superior Court

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 2121 Avenue of the Stars, Suite 2400, Los Angeles, CA 90067.

On July 6, 2011, I served true copies of the following document(s) described as [PROPOSED] JUDGMENT on the interested parties in this action as follows:

Peter R. Afrasiabi, Esq.
Chris W. Arledge, Esq.
ONE LLP
4000 MacArthur Blvd.
West Tower, Suite 1100
Newport Beach, CA 92660
Telephone: 949.502.2870
Facsimile: 949.258.5081
pafrasiabi@onellp.com
carledge@onellp.com

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Browne Woods George LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY FAX TRANSMISSION:** On July 6, 2011, I faxed a copy of the document(s) to the persons at the fax numbers listed in the Service List. I sent this transmission at 10:00 a.m. The telephone number of the sending facsimile machine was (310) 275-5697. No error was reported by the fax machine that I used.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 6, 2011, at Los Angeles, California.

_____
Ana Z. Porcellino

284683.2

[PROPOSED] JUDGMENT