BROWNE GEORGE ROSS LLP
Peter W. Ross (State Bar No. 109741)
  pross@bgrfirm.com
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Cheryl Priest Ainsworth (State Bar No. 255824)
  cainsworth@bgrfirm.com
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
Tel: (310) 274-7100 - Fax: (310) 275-5697

Attorneys for Plaintiff and
Counterdefendant STOP STARING!
DESIGNS, and Counterdefendant
ALICIA ESTRADA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| STOP STARING! DESIGNS, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TATYANA, LLC, a Nevada corporation d/b/a BETTIE PAGE CLOTHING; TATYANA KHOMYAKOVA, an individual; JAN GLASER, an individual; DESIGN TECHNOLOGY GROUP LLC, a Nevada limited liability company d/b/a BETTIE PAGE CLOTHING, and Does 1 through 10, inclusive,<br><br>Defendants.<br><br>TATYANA, LLC, a Nevada corporation d/b/a BETTIE PAGE CLOTHING,<br><br>Counterclaimants,<br><br>vs.<br><br>STOP STARING! DESIGNS, a California corporation; ALICIA ESTRADA, an individual; and ROES 1-10, inclusive,<br><br>Counterdefendants. | Case No. CV-09-02014 DSF (AJWx)<br><br>**PLAINTIFF STOP STARING! DESIGNS, INC.'S NOTICE OF MOTION FOR A PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KEITH J. WESLEY**<br><br>Judge:  Hon. Dale S. Fischer<br>Date:   February 15, 2012<br>Time:   3:00 p.m.<br>Crtrm.: 840<br><br>Trial: November 8-15, 2011 |

308105.2

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 15, 2012, at 3:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 840 of the United States District Court, Central District of California, located at 255 East Temple Street, Los Angeles, California 90012, before the Honorable Dale S. Fischer, plaintiff Stop Staring! Designs ("Stop Staring") will, and hereby does, move this Court to permanently enjoin defendants Tatyana, LLC and Design Technology Group LLC (both d/b/a Bettie Page Clothing), Jan Glaser and Tatyana Khomyakova ("Defendants") from the following:

A.     Using the mark Stop Staring! or any mark confusingly similar thereto;

B.     Using a trade dress that is the same or confusingly similar in overall look and feel as the trade dress depicted in Trial Exhibit 203; and/or

C.     Representing that Defendants or their goods or services originate with, are sponsored, endorsed, or licensed by, or are otherwise associated or affiliated with Stop Staring.

This Motion is made pursuant to 15 U.S.C. §§ 1116(a) & 1118 and the jury's Special Verdict on November 17, 2011 (Doc. No. 263).  This Motion is also based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Keith J. Wesley, the exhibits thereto, the files, records, and pleadings already on file in this action, and any other evidence or argument that may be presented by Stop Staring at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 21 and 28, 2011.

PLAINTIFF STOP STARING! DESIGNS, INC.'S NOTICE OF MOTION FOR A PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KEITH J. WESLEY

1   DATED:  December 22, 2011

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BROWNE GEORGE ROSS LLP
Peter W. Ross
Keith J. Wesley
Cheryl Priest Ainsworth

By  _____s/ Keith J. Wesley_____
                Keith J. Wesley
Attorneys for Plaintiff and Counterdefendant
STOP STARING! DESIGNS, and
Counterdefendant ALICIA ESTRADA

-2-

# TABLE OF CONTENTS

**Page**

1.   INTRODUCTION...................................................................................... 1

2.   RELEVANT FACTS. ................................................................................ 3

    A.   Stop Staring Owns The Trademark "Stop Staring!" And A Trade Dress In The Website Design Depicted In Exhibit 203.......................... 3

    B.   Defendants Intentionally Infringed Upon Stop Staring's Trademark And Trade Dress.................................................................. 4

    C.   Defendants Continued To Infringe During The Lawsuit....................... 6

    D.   Defendants Engaged in Repeated Deceitful Conduct In An Attempt To Cover Up The Extent Of Their Infringement..................... 6

3.   THIS COURT SHOULD ENTER A PERMANENT INJUNCTION AGAINST DEFENDANTS. ...................................................................... 8

    A.   The Lanham Act Authorizes Injunctive Relief...................................... 8

    B.   A Permanent Injunction Is Warranted. ................................................ 10

        1.   Irreparable Harm And No Adequate Remedy At Law............... 10

            (a)   Defendants' Trade Dress Infringement Irreparably Harms Stop Staring. ............................................... 11

            (b)   Defendants' Trademark Infringement Irreparably Harms Stop Staring. ............................................... 12

        2.   The Balance of Hardships........................................................... 12

        3.   The Public Interest..................................................................... 13

4.   CONCLUSION. ...................................................................................... 14

DECLARATION OF KEITH J. WESLEY. .............................................. 15

-i-

PLAINTIFF STOP STARING! DESIGNS, INC.'S NOTICE OF MOTION FOR A PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KEITH J. WESLEY

1

## **TABLE OF AUTHORITIES**

2
**Page**

3
## **CASES**

4

5
*Baden Sports, Inc. v. Kabushiki Kaisha Molten,*
    2007 WL 2790777 (W.D. Wash. Sep. 25, 2007) ................................. 10, 11, 14

6
*BMG Music v. Gonzalez,*
    430 F.3d 888 (7th Cir. 2005) ......................................................... 12

7

8
*Broadcast Music, Inc. v. Blueberry Hill Family Restaurants,*
    899 F. Supp. 474 (D. Nev. 1995) .................................................... 13

9
*Burgess v. Gilman,*
    475 F. Supp. 2d 1051 (D. Nev. 2007) ......................................... 11, 12

10

11
*Century 21 Real Estate Corp. v. Sandlin,*
    846 F.2d 1175 (9th Cir. 1988) ......................................................... 9

12
*Clicks Billiards, Inc. v. Sixshooters Inc.,*
    251 F.3d 1252 (9th Cir. 2001) ....................................................... 11

13

14
*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) ................................................................. 9, 10

15
*Fresenius Medical Care Holdings, Inc. v. Baxter International, Inc.,*
    2008 WL 928496 (N.D. Cal. 2008) ................................................. 11

16

17
*Funai Electric Co., Ltd. v. Daewoo Electronics Corp.,*
    593 F. Supp. 2d 1088 (N.D. Cal. 2009) .......................................... 12

18
*Levi Strauss & Co. v. Shilon,*
    121 F.3d 1309 (9th Cir. 1997) ......................................................... 9

19

20
*MercExchange, L.L.C. v. eBay, Inc.,*
    500 F. Supp. 2d 556 (E.D. Va. 2007) ........................................... 9, 10

21
*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.* ("*Grokster*"),
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) .......................................... 10

22

23
*Microsoft Corp. v. Atek 3000 Computer Inc.* ("*Atek 3000*"),
    2008 WL 2884761 (E.D.N.Y. Jul. 23, 2008) .............................. 10, 11

24
*Nike, Inc. v. Lydner,*
    2008 WL 4426633 (M.D. Fla. Sep. 25, 2008) ............................ 10, 14

25

26
*Polo Fashions, Inc. v. Dick Bruhn, Inc.,*
    793 F.2d 1132 (9th Cir. 1986) ................................................. 9, 12, 13

27
*Reno Air Racing Ass'n., Inc. v. McCord,*
    452 F.3d 1126 (9th Cir. 2006) ......................................................... 9

28

*SEC v. Murphy,*
  626 F.2d 633 (9th Cir. 1980)..................................................13

*Smith & Nephew, Inc. v. Synthes (U.S.A.),*
  466 F. Supp. 2d 978 (W.D. Tenn. 2006)...................................11

*TELUS Corp. v. Telus Communications, Inc.,*
  2007 WL 3169131 (C.D. Cal. Feb. 9, 2007)..............................12

*Wolfard Glassblowing Co. v. Vanbragt,*
  118 F.3d 1320 (9th Cir. 1997)..................................................6

**STATUTES**

15 U.S.C.
  § 1116(a)...........................................................................1, 9

**OTHER AUTHORITIES**

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,*
  (4th ed. 2008)
  § 30:1.................................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

**1.  INTRODUCTION.**

Plaintiff Stop Staring! Designs ("Stop Staring" or "Plaintiff") respectfully requests entry of a permanent injunction barring future trade dress and trademark infringement by defendants Tatyana, LLC and Design Technology Group LLC ("Bettie Page Clothing") and their owners Jan Glaser and Tatyana Khomyakova (collectively "Defendants").

Trademark and trade dress infringement, which concern issues of company reputation, brand image and customer recruitment and retention, are quintessential examples of harms that cannot be fully repaired by damages, and that therefore frequently require the additional remedy of injunctive relief.  The present case is one in which injunctive relief is clearly required, given the harm Plaintiff has already suffered, the nature of the Defendants' conduct, and the clear balance of equities in favor of permanent injunctive relief.

The jury has already found Defendants liable for trade dress infringement.  In the trade dress and unfair competition component of this case, which was tried on November 8-15, 2011, the jury found the following:

- Defendants infringed upon a "pink and green" website trade dress owned by Stop Staring.

- Defendants' infringement substantially damaged Stop Staring and substantially and unjustly enriched Defendants.

- Defendants infringed intentionally and with malice, oppression and/or reckless disregard of Stop Staring's rights.

The jury's rejection of Defendants' claims of innocence and good faith reflected the overwhelming evidence of Defendants' lack of credibility, both in their dealings with Stop Staring and in their conduct before this Court.  Defendants duped Stop Staring into befriending them and then turned around and started a competing

1   business that sold knockoffs of Stop Staring dresses.  They willfully copied Stop

2   Staring's brand identity and even surreptitiously embedded Stop Staring's mark on

3   their website.  They continued to infringe upon Stop Staring's trade dress during the

4   course of the lawsuit.  They did not produce key documents in discovery, some of

5   which were later obtained through third parties.  They repeatedly perjured

6   themselves.  Quite simply, they proved that they could not be trusted, then or now.

7        The trademark component of this case will be tried to this Court on February

8   15.  Trademark infringement is for all intents and purposes conceded.  Stop Staring

9   owns a registered trademark in the mark "Stop Staring!".  The undisputed facts

10   establish that:

11   •   Defendants embedded the phrase "Stop Staring Clothing" in their

12       website;

13   •   this caused a link to their website to appear on the list of search results

14       if one were to type "Stop Staring" or a variation thereof into a search

15       engine;

16   •   the search engine result link always had the phrase "Stop Staring

17       Clothing – Bettie Page Clothing" as its title, and oftentimes had the

18       phrase "Shop Our Store! Dresses . . . Stop Staring Clothing" in the text

19       directly below the link;

20   •   at least 490 visitors (a) typed "Stop Staring" or a variation thereof in a

21       search engine, (b) found and clicked on the link "Stop Staring Clothing

22       – Bettie Page Clothing" and thereby (c) ended up on Bettie Page

23       Clothing's website; and

24   •   the webpage those visitors landed on prominently displayed the phrase

25       "Stop Staring Clothing" and icons that, if clicked, led to Bettie Page

26       Clothing dresses.

27   Moreover, the same factors that drove the jury to find that Defendants infringed

28

-2-

1  Stop Staring's trade dress intentionally and with malice compel a finding that

2  Defendants' trademark infringement was made with the same malice and intent.

3      Defendants' infringement caused Stop Staring irreparable harm, and any risk

4  of future infringement would continue that irreparable harm.  The balance of the

5  equities, and of the public interest, both also favor injunctive relief, as Defendants

6  can show no harm as a result of the proposed injunction, and the public interest is

7  served by the efficiency of the injunctive remedy.  Finally, Defendants' dishonest

8  behavior both prior to and within these proceedings reinforces the need for

9  injunctive relief, as Defendants simply cannot be trusted to police themselves.  This

10 is exactly the case where injunctive relief is required.

11 **2.      RELEVANT FACTS.**

12     **A.      Stop Staring Owns The Trademark "Stop Staring!" And A Trade**

13              **Dress In The Website Design Depicted In Exhibit 203.**

14     Stop Staring owns a federally registered trademark for "Stop Staring!".  (Tr.

15 Exs. 330 & 339.)[1]  Stop Staring has continuously used the Stop Staring mark since

16 1997.  There is no dispute regarding Stop Staring's ownership of the Stop Staring

17 mark.

18     Between 2004 and early 2008, Stop Staring utilized a distinctive trade dress

19 on its website – referred to at trial as the "pink and green" trade dress.[2]  At trial,

20 there were in evidence over 70 websites related to the sale and marketing of retro-

21 style dresses.  (Tr. Exs. 294 & 355.)  Out of those third-party sites, not one had a

22 similar look and feel to Stop Staring's pink and green trade dress.  (Tr. Ex. 355.)

23

24 [1]  All of the trial exhibits cited herein and appended to the Declaration of Keith J.
   Wesley were admitted at the jury trial in this case, except for Trial Exhibits 330 and
25 339, which will be offered at the February 15 bench trial.

26 [2]  Stop Staring's website has at all relevant times been
27 www.stopstaringclothing.com (Tr. Ex. 203).

28

1  Stop Staring used the pink and green trade dress to grow its business and increase its

2  sales exponentially between 2004 and 2008.  (Tr. Ex. 334.)

3  **B.    Defendants Intentionally Infringed Upon Stop Staring's**

4        **Trademark And Trade Dress.**

5      In Fall 2007, Bettie Page Clothing used Stop Staring's trade dress on its

6  inaugural product catalog (Tr. Ex. 204A), and in April 2008, Bettie Page Clothing

7  began using Stop Staring's trade dress on its website.  (Tr. Ex. 202A.)  After

8  viewing extensive evidence of Defendants' prior knowledge of and relationship with

9  Stop Staring and the strikingly similar look and feel of the parties' sites, the jury

10  found that Defendants had misappropriated Stop Staring's trade dress intentionally

11  and with malice, oppression and/or reckless disregard for Stop Staring's rights.[3]

12      In August 2008, Defendants began using Stop Staring's registered trademark.

13  The facts regarding Defendants' use of Stop Staring's mark are now largely

14  undisputed.

15  •   Defendants embedded the phrase "Stop Staring Clothing" in their

16      website www.bettiepageclothing.com – i.e., the site with Stop Staring's

17      trade dress and with pictures of dresses that look strikingly similar to

18      Stop Staring's designs being modeled by Stop Staring's former lead

19      model (Tr. Exs. 221 & 340);

20  •   Defendants' use of the phrase "Stop Staring Clothing" caused a link to

21      their website to appear on the list of search results if one were to type

---

[3]    The prior relationship between the parties – e.g., Defendants' purchase of Stop
Staring dresses, meetings with Stop Staring, visit to Stop Staring's headquarters and
negotiations to become a Stop Staring retailer – was well-documented at trial.  Stop
Staring presumes the Court is now very familiar with the evidence in that regard,
having presided over the trial and extensive pre-trial motion practice.  Therefore,
Stop Staring will not again tell the tale in full in this motion.

"Stop Staring" or a variation thereof into a search engine such as Google or Yahoo or the like (Tr. Ex. 220);

- The search engine result link always had the phrase "Stop Staring Clothing – Bettie Page Clothing" as its title, and oftentimes had the phrase "Shop Our Store! Dresses . . . Stop Staring Clothing" in the text directly below the link (Tr. Ex. 220-001);

- At least 490 visitors (a) typed "Stop Staring" or a variation thereof in a search engine, (b) found and clicked on the link "Stop Staring Clothing – Bettie Page Clothing" and thereby (c) ended up on Bettie Page Clothing's website (Ex. C, Stricchiola Decl., Doc. No. 139-3, ¶24.C);

- The Bettie Page Clothing webpage those visitors landed on prominently displayed the phrase "Stop Staring Clothing" and icons that, if clicked, led to Bettie Page Clothing dresses (Tr. Ex. 221).

Defendants admitted their intent in using Stop Staring's trademark was to drive consumers who were familiar with Stop Staring to the Bettie Page Clothing site. (Ex. A, Glaser Trial Testimony Day 2 at 139:2-9.) Although Defendants' principal, Jan Glaser, claimed that he had always intended to keep the reference to "Stop Staring" hidden, and that he had no idea the phrase "Stop Staring" was clearly visible to visitors to Bettie Page Clothing's site and to persons who saw the "Stop Staring Clothing – Bettie Page Clothing" search result link on Google, Yahoo or other search engines, any such assertion strains credulity, particularly in light of Mr. Glaser's overall lack of credibility and active role with Bettie Page Clothing's website and business.

Although the jury was not tasked with making a special finding regarding Defendants' intent to infringe Stop Staring's trademark, it is inconceivable that Defendants intentionally and maliciously adopted Stop Staring's trade dress but infringed upon Stop Staring's trademark innocently and/or accidentally. Rather,

1 Defendants' course of conduct evidences intentional trademark infringement as
2 well.

    **C.    Defendants Continued To Infringe During The Lawsuit.**

4     Stop Staring sued Bettie Page Clothing in March 2009. (Doc. No. 1.) Bettie
5 Page Clothing continued to utilize Stop Staring's trade dress through at least early
6 2010.[4] (Tr. Exs. 358, 360, 361.)

    **D.    Defendants Engaged in Repeated Deceitful Conduct In An Attempt**
8           **To Cover Up The Extent Of Their Infringement.**

9     When Defendants were confronted with their obvious intentional copying,
10 they resorted to dishonesty, concealment and obfuscation. For example:

11     ●     In the Rule 26(f) report filed with the Court, Defendants represented:
12         "Plaintiff's trademark claim is absurd as there are no conceivable
13         damages – **a dead link on Defendants' site was apparently accessed**
14         **only by Plaintiff.**" (Emphasis added.) (Ex. D p. 3:20-24 [Doc. No.
15         27].) That statement was false. Defendants' own "Google analytics"
16         report showed that the "Stop Staring – Bettie Page Clothing" page on
17         Bettie Page Clothing's site was accessed by myriad persons – from
18         New York, New York to Portland, Oregon to Ann Arbor, Michigan to
19         Columbus, Ohio, to name just a few. (Tr. Ex. 264 pp. 026-029.)
20         Moreover, Defendants knew all along that the Stop Staring trademark
21         had not been on "a dead link"; rather, Defendants intentionally used the

---

[4]   Moreover, although Defendants did ultimately move away from the infringing
site, they did not go very far. Their site, at least as of December of this year – i.e.,
weeks after the jury verdict – continues to incorporate prominently the pink and
green pastel color scheme that was at issue in this case. (Wesley Decl., ¶ 8 and Ex.
E.) Defendants' current site is contrary to the message courts – including the Ninth
Circuit – intend to send to willful infringers: "keep a fair distance from the 'margin
line'". *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1323 (9th Cir.
1997).

1    Stop Staring mark on an active webpage as part of their search engine

2    optimization ("SEO") strategy to gain more visitors to their website.

3    (Tr. Ex. 276; see Tr. Ex. 221 p. 003.)

4    •    During discovery, Defendants withheld critical documents.  For

5    example, Stop Staring requested all documents that mention "Stop

6    Staring".  Defendants possessed several e-mail communications with

7    their SEO consultant in which Jan Glaser requested that Stop Staring be

8    used as a keyword on the Bettie Page Clothing website.  Defendants did

9    not produce those e-mails until after Stop Staring subpoenaed them

10   directly from Defendants' SEO consultant.  Similarly, Defendants did

11   not produce communications that were produced by their website

12   developer – Bannerview – pursuant to subpoena.  (Wesley Decl., ¶¶ 2-

13   3.)  There is no telling what other e-mails or documents were never

14   produced by Defendants at all, although the lack of internal e-mails

15   regarding Stop Staring certainly seems odd under the circumstances.[5]

16   •    During trial, Glaser was impeached with prior inconsistent testimony

17   on a dozen different occasions.  (Ex. A, Glaser Trial Testimony Day 2,

18   at 119:2-6, 119:16-120:1; 122:11-123:8; 124:14-24; 125:7-25; 129:10-

19   130:1; 130:2-17; 130:21-131:10; 132:5-133:17; 137:12-25; 138:1-16;

20   138:17-139:9; 140:6-25.)

21   •    During trial, Glaser gave incredible testimony, asserting that he had no

22   idea his website looked like Stop Staring's site, despite having visited

23   Stop Staring's site on a regular basis.  (Ex. A, Glaser Trial Testimony

24   Day 2, at 123:11-125:2; 131:18-132:4.)

25

26   [5]   In contrast, during discovery, Stop Staring was an open book.  It produced even
27   highly private, personal and emotional emails between Stop Staring's owner and her
     sister, which Defendants repeatedly attempted to exploit at trial.

28

- Perhaps most egregious, during trial Glaser swore to the jury that Defendants had only used the "pink and green" trade dress in issue for a few months – i.e., between April 2008 and November 2008.  (Ex. B, Glaser Trial Testimony Day 3 at 113:3-115:14; 130:6-12.)  Glaser no doubt recognized that there were no trial exhibits on the parties' joint list that could disprove his timeline, which would substantially mitigate the scope of potential damages and bolster his claimed innocence. What Glaser neglected to realize, however, was that his website developer, Bannerview, had produced clear evidence that Bettie Page Clothing had continued to use the infringing trade dress all the way through at least early 2010.  (Tr. Exs. 358, 360, 361.)  When confronted with this impeachment evidence and given one last chance to tell the truth, Glaser clung desperately to his script, regardless of its absurdity.  (Ex. B, Glaser Trial Testimony Day 3 at 135:7-12; see 132:7-135:6.)  While Glaser and the website developer both clumsily tried to explain away this damning evidence when confronted with it at trial, the jury's findings of intent and malice made clear that the jury did not believe them.

In sum, Defendants intentionally infringed Plaintiffs' trade dress and trademark for their own personal gain.  Then, when confronted with their wrongdoing, they showed no contrition, and instead proceeded to engage in further misconduct in an attempt to hide their previous transgressions.  This is precisely the sort of case in which injunctive relief is warranted.

## 3.    THIS COURT SHOULD ENTER A PERMANENT INJUNCTION AGAINST DEFENDANTS.

### A.    The Lanham Act Authorizes Injunctive Relief.

Section 34(a) of the Lanham Act provides, in part: "The several courts vested

-8-

1    with jurisdiction of civil actions arising under this Act shall have the power to grant

2    injunctions . . . to prevent the violation of any right of the registrant of a mark

3    registered in the Patent and Trademark Office or to prevent a violation of [section

4    1125(a)]." 15 U.S.C. § 1116(a).

5         The Ninth Circuit has stated that "[i]njunctive relief is the remedy of choice

6    for trademark and unfair competition cases, since there is no adequate remedy at law

7    for the injury caused by a defendant's continuing infringement." *Century 21 Real*

8    *Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988); *see also* 5 J. Thomas

9    McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 30:1 (4th ed. 2008)

10   ("An injunction is the usual and standard remedy once trademark infringement has

11   been found").

12        Injunctive relief is particularly appropriate where the defendant violated the

13   Lanham Act intentionally. *See, e.g., Levi Strauss & Co. v. Shilon*, 121 F.3d 1309,

14   1314 (9th Cir. 1997), *citing Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132,

15   1135 (9th Cir. 1986). Indeed, the Ninth Circuit has held that a willful infringer

16   should be permanently enjoined from future infringement even where the infringer

17   has already voluntarily ceased its infringement. *See Polo Fashions*, 793 F.2d at

18   1135 (reversing district court's denial of motion for permanent injunction, even

19   though defendant had ceased selling infringing products).

20        The United States Supreme Court reaffirmed the traditional test for injunctive

21   relief in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006). *See also*

22   *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137-38 (9th Cir. 2006)

23   (holding that *eBay* factors apply to injunctive relief under Lanham Act and affirming

24   grant of injunction under Lanham Act). Under *eBay*, the movant must show: "(1)

25   that it has suffered an irreparable injury; (2) that remedies available at law, such as

26   monetary damages, are inadequate to compensate for that injury; (3) that,

27   considering the balance of hardships between the plaintiff and defendant, a remedy

28

-9-

in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc.*, 547 U.S. at 390.

**B.      A Permanent Injunction Is Warranted.**

　　　　　　1.　　Irreparable Harm And No Adequate Remedy At Law.

　　Because an "irreparable" injury by definition cannot be repaired by damages alone, the first and second prongs of the *eBay* test duplicate one another and thus can be analyzed as a unit. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.* ("*Grokster*"), 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) (The court's "adequate remedy at law analysis parallels that performed for irreparable harm"); *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 582 (E.D. Va. 2007) ("[T]he requisite analysis for the second factor of the four-factor test inevitably overlaps with that of the first").

　　"[U]nder the Lanham Act, irreparable injury is satisfied upon a finding of trademark infringement and that the infringement gives rise to a likelihood of confusion." *Microsoft Corp. v. Atek 3000 Computer Inc.* ("*Atek 3000*"), 2008 WL 2884761, at *5 (E.D.N.Y. Jul. 23, 2008) (quotation omitted); *Baden Sports, Inc. v. Kabushiki Kaisha Molten*, 2007 WL 2790777, at *2 (W.D. Wash. Sep. 25, 2007) (irreparable harm established with evidence of willful infringement, continued risk of lost goodwill and/or continued consumer confusion); *see also Nike, Inc. v. Lydner*, 2008 WL 4426633, at *5 (M.D. Fla. Sep. 25, 2008) (irreparable harm exists where plaintiff has developed goodwill among the consuming public and "the public would be confused about the origin of merchandise, particularly when the merchandise was not manufactured to [plaintiff's] quality standards").

　　Indeed, "where there is potential for ***future*** harm from infringement, there is no adequate remedy at law." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) (emphasis added); *see also Fresenius Medical Care Holdings, Inc. v. Baxter International, Inc.*, 2008 WL 928496 at *4 (N.D. Cal. 2008) ("[M]onetary

-10-

1 damages are not an adequate remedy against future infringement . . . .") (quotation

2 omitted). "[D]enying injunctive relief would force the wronged party to endure

3 continuing infringement and to bring successive suits for money damages." *Burgess*

4 *v. Gilman*, 475 F. Supp. 2d 1051, 1063 (D. Nev. 2007); *see also Baden Sports*, 2007

5 WL 2790777, at *2 (monetary damages are inadequate to remedy the continued

6 erosion of good will that plaintiff has created with its customers and retailers).

(a)     Defendants' Trade Dress Infringement Irreparably Harms
        Stop Staring.

9          The jury found that Defendants willfully infringed upon Stop Staring's trade

10 dress.  Therefore, the jury necessarily found a likelihood of confusion, which

11 establishes past irreparable harm. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d

12 1252, 1258 (9th Cir. 2001) (required elements of trade dress claim include

13 likelihood of confusion).  The jury also specifically found that Defendants'

14 infringement caused substantial financial harm to Stop Staring, and awarded Stop

15 Staring actual damages of $250,000. *See Smith & Nephew, Inc. v. Synthes (U.S.A.)*,

16 466 F. Supp. 2d 978, 983 (W.D. Tenn. 2006) ("The loss of market share and the

17 resulting lost profits and loss of brand name recognition which [defendant] suffered

18 because of [plaintiffs'] continued sale of the infringing products constitute injuries

19 that are both incalculable and irreparable").

20          Any future infringement by Defendants would thus cause similar damage and

21 irreparable harm.  This future potential harm is not remediable as a matter of law.

22 *Microsoft Corp.*, 490 F. Supp. 2d at 882; *Baden Sports*, 2007 WL 2790777, at *2;

23 *see also Fresenius*, 2008 WL 928496 at *3 (denying a permanent injunction would

24 "irreparably harm [Plaintiff's] reputation and goodwill . . . , threaten [Plaintiff's]

25 extensive investments in [product development and marketing], and potentially

26 encourage other companies to infringe [Plaintiff's] intellectual property").

27

28

-11-

          (b)    Defendants' Trademark Infringement Irreparably Harms Stop Staring.

Nearly 500 consumers and/or retailers who were searching for Stop Staring were diverted instead to Defendants' website.  This alone evidences that Stop Staring lost the ability to control its brand image and thus caused harm.  Moreover, Stop Staring will present evidence at the bench trial of additional harm that will result from future trademark infringement.

        2.    The Balance of Hardships.

The balance of hardships without question favors issuance of a permanent injunction.  "An injunction remains appropriate to ensure that the misconduct does not recur as soon as the case ends." *BMG Music v. Gonzalez*, 430 F.3d 888, 893 (7th Cir. 2005); *see TELUS Corp. v. Telus Communications, Inc.*, 2007 WL 3169131, at *2 (C.D. Cal. Feb. 9, 2007) (A permanent injunction is warranted under the Lanham Act where plaintiff "would remain needlessly exposed to future irreparable harm in the absence of an injunction").

Unless Defendants intend to resume infringement, they will suffer no hardship whatsoever. *See Polo Fashions*, 793 F.2d at 1135-36 ("If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives Polo substantial protection of its trademark").

On the other hand, if Defendants do infringe again, an injunction will protect Stop Staring from the burden of bringing a brand new case. *See Funai Electric Co., Ltd. v. Daewoo Electronics Corp.*, 593 F. Supp. 2d 1088, 1111 (N.D. Cal. 2009) ("in the absence of a permanent injunction, [plaintiff] will be forced to engage in further litigation if [defendant] infringes its patents again"); *see also Burgess*, 475 F. Supp. 2d at 1063 ("denying injunctive relief would force the wronged party to endure continuing infringement and to bring successive suits for money damages.").

The likelihood that Defendants will infringe again is considerable in light of

-12-

1  Defendants' conduct in this case.  Defendants continued to violate Stop Staring's

2  rights even after Stop Staring brought this action by continuing to use the infringing

3  trade dress throughout much of the lawsuit.  Their excuses for infringing were not

4  merely "thin"; they were perjurious.  Moreover, key documents were also

5  suspiciously absent from Defendants' document production.  *See SEC v. Murphy*,

6  626 F.2d 633, 655 (9th Cir. 1980) (the "existence of past violations may give rise to

7  an inference that there will be future violations"); *Broadcast Music, Inc. v.*

8  *Blueberry Hill Family Restaurants*, 899 F. Supp. 474, 483 (D. Nev. 1995) (stating

9  that defendant's "thin excuses" for infringement "do not inspire confidence" that

10  defendant poses no threat of future infringement).  As the Ninth Circuit held in

11  reversing a district court's denial of a request for a permanent injunction:

12 |  The defendants had willfully violated Polo's trademark
13 |  rights.  The defendants refused to stop violating those
   |  rights until Polo brought suit in federal district court.  We
14 |  should not require Polo also to introduce concrete
   |  evidence that the defendants are likely to infringe again.  If
15 |  the defendants sincerely intend not to infringe, the
16 |  injunction harms them little; if they do, it gives Polo
   |  substantial protection of its trademark.
17

18  *Polo Fashions*, 793 F.2d at 1135-36.

19        In sum, Defendants suffer no harm from being required to refrain from illegal

20  conduct.  Plaintiff in contrast gains substantial protection from a permanent

21  injunction.  The balance of hardships weighs in favor of an injunction.

22        3.     The Public Interest.

23        The public interest favors providing reasonable protection and assurance to

24  innocent intellectual property owners like Stop Staring.  "The public interest is

25  served by upholding . . . trademark laws – by entering an injunction that prohibits

26  further willful infringement and intentional false advertising.  Particularly, the

27  public interest will be served by prohibiting continued deception of consumers . . . ."

28  *Baden Sports*, 2007 WL 2790777, at *2; *see also Nike*, 2008 WL 4426633, at *5

-13-

1  ("An injunction would serve the public interest by protecting consumers from being

2  misled and confused as to the source of Defendants' unauthorized merchandise

3  bearing [plaintiff's] Trademarks"); *Atek 3000*, 2008 WL 2884761, at *6 ("the public

4  interest lies in the enforcement of the principles recognized by Congress in creating

5  the Acts, especially the prevention of consumer confusion").

6       The public interest also favors expediting litigation when a previously

7  adjudged infringer reverts to its old ways.  It would be inefficient and against public

8  interest to require Stop Staring to start all over again if Bettie Page Clothing repeats

9  the same wrongs.

10  **4.**    **CONCLUSION.**

11       For the foregoing reasons, Stop Staring respectfully requests that the Court

12  enter a permanent injunction against Defendants.

13  DATED:  December 22, 2011       BROWNE GEORGE ROSS LLP
      Peter W. Ross

14        Keith J. Wesley
      Cheryl Priest Ainsworth

15

16

17        By       s/ Keith J. Wesley
      Keith J. Wesley

18        Attorneys for Plaintiff and Counterdefendant
      STOP STARING! DESIGNS, and

19        Counterdefendant ALICIA ESTRADA

20

21

22

23

24

25

26

27

28

PLAINTIFF STOP STARING! DESIGNS, INC.'S NOTICE OF MOTION FOR A PERMANENT INJUNCTION;
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KEITH J. WESLEY

## DECLARATION OF KEITH J. WESLEY

I, Keith J. Wesley, declare as follows:

1.     I am an attorney licensed to practice in the State of California and am a partner in the firm of Browne George Ross LLP, attorneys of record for Plaintiff and Counterdefendant Stop Staring! Designs and Counterdefendant Alicia Estrada in the above-referenced matter. I have firsthand, personal knowledge of the matters set forth herein and, if called upon to do so, could and would testify competently thereto.

2.     During discovery Stop Staring requested all documents that mention "Stop Staring". Defendants' initial productions did not include a number of e-mail communications between Defendants and their SEO consultant in which Jan Glaser requested that Stop Staring be used as a keyword on the Bettie Page Clothing website.

3.     Stop Staring then subpoenaed Defendants' SEO consultant directly for documents regarding the Bettie Page Clothing website, including documents that mention "Stop Staring". Among the documents produced by the SEO consultant were several e-mail communications between Defendants and their SEO consultant in which Jan Glaser requested that Stop Staring be used as a keyword on the Bettie Page Clothing website. None of these documents had been produced by Defendants in their original productions. It was only after this production by Defendants' SEO consultant that Defendants finally produced its own copies of these same documents. Relatedly, Defendants did not produce requested communications with their website developer – Bannerview – which were later obtained through a subpoena issued directly to Bannerview.

4.     Appended hereto as Exhibit A are true and correct copies of portions of the Trial Transcript for day two of trial, which took place on November 9, 2011.

-15-

5.     Appended hereto as Exhibit B are true and correct copies of portions of the Trial Transcript for day three of trial, which took place on November 10, 2011.

6.     Appended hereto for the convenience of the Court as Exhibit C is a true and correct copy of the Declaration of Jessie Stricchiola, which is also found at Docket No. 139-3.

7.     Appended hereto for the convenience of the Court as Exhibit D is a true and correct copy of the Rule 26(f) Report, which is also found at Docket No. 27.

8.     Appended hereto as Exhibit E is a true and correct copy of printouts that I had printed from the www.bettiepageclothing.com website on December 20, 2011.

9.     Appended hereto as Exhibits 202A, 203, 204A, 220, 221, 264, 276, 294, 334, 340, 355, 358, 360 and 361 are true and correct copies of the admitted trial exhibits that bore the same exhibit numbers at trial.

10.     Appended hereto as Exhibit 330 is a true and correct copy of trial exhibit 330, which Plaintiff will offer at the February 15, 2012 bench trial.

11.     Appended hereto as Exhibit 339 is a true and correct copy of the relevant pages of trial exhibit 339, which Plaintiff will offer at the February 15, 2012 bench trial.

I declare that the foregoing is true and correct and that this declaration was executed this 22d day of December, 2011 at Los Angeles, California.


                              /s/Keith J. Wesley
                              Keith J. Wesley

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action.** I am employed in the County of Los Angeles, State of California. My business address is 2121 Avenue of the Stars, Suite 2400, Los Angeles, CA 90067.

On December 22, 2011, I served true copies of the following document(s) described as **PLAINTIFF STOP STARING! DESIGNS, INC.'S NOTICE OF MOTION FOR A PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KEITH J. WESLEY** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Browne George Ross LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 22, 2011, at Los Angeles, California.

Diane Torosvan

---

**SERVICE LIST**
**Stop Staring! Designs v. Tatyana, LLC**
**CV-09-02014 DSF (AJWx)**

Peter R. Afrasiabi
Chris W. Arledge
Imran F. Vakil
ONE LLP
4000 MacArthur Blvd.
West Tower, Suite 1100
Newport Beach, CA 92660
Tel: 949.502.2870
Fax: 949.258.5081
pafrasiabi@onellp.com
carledge@onellp.com
ivakil@onellp.com

Attorneys for Defendants
TATYANA, LLC d/b/a BETTIE PAGE
CLOTHING, TATYANA
KHOMYAKOVA, and JAN GLASER